OF THE

STATE OF IOWA

AT

DES MOINES, JANUARY AND MAY TERMS, 1917

AND IN THE SEVENTY-FIRST YEAR OF THE STATE.

---

JAMES E. KUEHL, Appellant, v. TOWN OF BETTENDORF,
Appellee.

DEDICATION: Acceptance—Public Highways—Presumption. Prin-
1 ciple recognized that an acceptance by the public of a dedica-
tion of ground for a public highway is presumed to be as broad
as the grant.

ADVERSE POSSESSION: Public Property—Highways—Limitation
2 of Actions. Principle recognized that the statute of limitations
does not run against the public.

BOUNDARIES: Acquiescence—Non-Application of Doctrine to the
3 Public—Highways. The doctrine of boundary lines by acquies-
cence as applied between individuals does not apply where one
of the parties is a governmental agency and the subject-matter
is one in which the public has a vested interest. So held as
to a public highway.

VOL. 179 IA.—1

**ESTOPPEL:** Equitable Estoppel—Highway Boundaries—Fences and
4   Trees. The planting of trees and the building of fences, without
objection by the public authorities, will not estop the public
to claim that such trees and fences are within the public
highway.

**DEDICATION:** Acceptance—Want of Municipal Body to Accept.
5   "User" of dedicated streets and alleys by the public is sufficient
to hold the grant until such time as there may be a legally
organized municipal body and acceptance thereby.

**DEDICATION:** Operation and Effect—Public Highways. One who
6   purchases lots by plat descriptions acquires in all the streets of
the plat an interest which can only be terminated by a valid
vacation.

**HIGHWAYS:** Abandonment—Non-User—Effect. Abandonment of a
7   public highway is not shown by non-user and non-improvement
of the highway during a time when it was not needed.

**HIGHWAYS:** Adverse Possession—Recognition of Streets—Effect.
8   One who by his conduct recognizes the existence of public streets
and alleys, may not be heard to say that, during such period of
recognition, he was holding parts of the same adversely to the
public. (This is on the concession, *arguendo*, that the statute of
limitations may run against the public.)

**PLEADING:** Issue, Proof and Variance—Evidence Must Conform
9   to Pleading. A pleader can take no benefit from proofs which
are broader than his pleading.

*Appeal from Scott District Court.*—M. F. DONEGAN, Judge.

SATURDAY, JANUARY 20, 1917.

THIS is a controversy over the boundary lines of plaintiff's lots in the town of Bettendorf. The action is to quiet plaintiff's title to a strip which defendant contends is a part of one of the streets of the town, and another strip which the town claims is an alley. The trial court dismissed plaintiff's petition, and he appeals.—*Affirmed.*

*Helmick & Boudinot,* for appellant.

*J. C. Hall,* for appellee.

DEEMER, J.—I. Something like 60 years ago, a plat was made and filed by the then owners of a parcel of land near the city of Davenport, bounded on the south by what was called the Churchill farm, and on the north by what was called the Davenport and LeClaire road. There were also intersecting streets, running north and south between the blocks, known as Kossuth, Gem, and Moline Streets. There were four blocks, which varied in size: one had 22 lots, another 14, a third 16, and a fourth 18. The lots bearing the smaller numbers in each block, faced south, and abutted on the road; while those on the north, bearing the larger numbers, faced upon an alley. The road was 66 feet in width, the intersecting streets 60 feet, and the alley 26 feet. Just north of the alley, and between it and the Churchill farm, and running the entire length of the alley on the north, was another strip, about 4 feet wide. A copy of the plat is here inserted for a better understanding of the case.

Attached to the plat, and to the certificate of the dedicator, was this statement of the surveyor who made the plat:

"Located in the south half of the southeast quarter of Section 29 in Township 78 N. of Range 4 East of the 5th

Principal Meridian. The North alley 26 feet wide, leaving a strip next to A. Churchill's line 4 feet wide and not included in this survey. Main Street 66 feet wide, and all other streets 60 feet. Lots 40 feet wide. Lots A and B are annexed.

"By Jona Parker, County Surveyor.

"Stones are placed at each corner designated, and posts to all other corners of blocks, also corresponding corners to each lot.

"Jona Parker, Sur."

The town of Bettendorf was incorporated in the spring of 1903. Before that, the place in question was nothing more than an unincorporated village, known first as Lillienthal, and afterwards as Gilbert. The original dedicators, a Mrs. Gilbert and her husband, from time to time made sales of the lots in this plat, always describing the same in accord with, and with reference to the plat numbers; and, in the year 1877, plaintiff's father purchased Lots 1, 2, 3, 4, 11, 12, 13, and 14, in Block 3, of the "map of Lillienthal." The description of the property was according to the plat, and not by metes and bounds. Plaintiff claims that, at the time his father purchased the lots, all the other lots and blocks in this plat had been sold, and that all of them had been fenced,—the ones he purchased being the only ones which were unimproved and unfenced; and he also claims that, almost immediately, his father proceeded to fence the lots he had purchased, and that he erected substantial fences on the south and west lines of his property, placing his fences on the south in line with other fences which had been erected by adjoining proprietors. The father understood that his south fence was on the line of the Davenport and LeClaire road, the name of which was changed to Main Street by the Gilberts, when they made their original plat, and again changed to State Street, when the defendant town was incorporated. It is claimed that there were no stakes or other visible monuments at the time these fences were erected. The

fence on the west side of the lots, and between them and what was known as Gem Street, was extended northward across the alley, and also the four-foot strip, and on to a line of the Churchill farm, thus obstructing and cutting off access to the alley on the north. No complaint seems to have been made of the matter at this time, perhaps for the reason that there was no incorporated town to complain.

Prior to the year 1877, the alley had been unobstructed, and was open for its entire length, and had been used more or less, by the owners of the property and by the public, as an alley. One Kohl, who owned the other lots in Block 3, had fenced the alley at times; but both he and the plaintiff's father had access to their northernmost lots over the streets east and west of the block. Later, one Ficke purchased the four-foot strip to the north of the alley, and, as we understand it, the Churchill farm, and, at his request, the fence erected by plaintiff's father was removed from the four-foot strip. In 1910, part of the Churchill farm was platted as Ficke's First Addition to the town of Bettendorf. After the fences were erected, plaintiff's father cultivated such of his lots as were fit for cultivation, including part of the alley. He filled in the east end of the alley, north of the lots he had purchased, to a depth of about two feet. They were theretofore covered with rock, which was generally exposed and lay near the surface. A grove of trees sprang up on this ground, which, at the time of the trial, were from four inches to one foot in diameter. Plaintiff's father made no other improvements upon the alley, and did not use it save as indicated. In the year 1907, plaintiff purchased the lots from his father, the description being of the lots as designated on the plat, and nothing more. Plaintiff testified that he received a deed from his father for these 8 lots and nothing else. After buying the lots, plaintiff made some improvements thereon,—built a chicken house and some other outbuildings; but these were all placed south of the south line of the alley. He removed the fence on the south, and set out a row of mulberry trees,

where the fence had been. Some time during the latter part of the year 1910, or the forepart of 1911, the defendant town, having in contemplation some public improvements, had an engineer run the lines of the lots and blocks and streets and alleys shown on the Lillienthal plat, and this engineer discovered that plaintiff had encroached something like three feet on the street to the south, and that he had enclosed the alley to the north, as also had Kohl, the owner of the lots in the east end of the block. Kohl was notified to remove his fences from the alley, which he did; but plaintiff refused to do so, and he commenced this action to quiet title to the alley, and to the three feet of ground which defendant claims is in the street to the south. He was defeated in the court below, and appeals.

We shall first consider plaintiff's claim to the strip on the south. The first proposition to be settled here is the true location of plaintiff's south line, or rather, the true boundary line between Lots 1, 2, 3, and 4, and Main, or State Street. Plaintiff contends that, as his father placed his fences on the southern boundary of his lots, in line with the fences on the south side of Blocks 1, 2, and 4, this is evidence of the true line, and sufficient to justify his claim to the line of the row of trees planted by him. He also contends that the town has improved this street with reference to the line as claimed by plaintiff, made gutters, consented to the construction of temporary sidewalks, etc.,—this, too, in confirmation of the line as claimed. He also insists that he is entitled to claim this strip by adverse possession and by acquiescence, and that the city is now estopped from claiming any title to the strip. As to the first proposition, it is shown that the fences on this south line, constructed by owners of lots in the other blocks, are not in a true line. They vary from 6 inches to 2 feet from a perfectly straight line; in some instances running out into the street, and in others, back upon the lots. This being true, the actual construction of the fences at an early date in the history of the land, gives us

little help, in determining where the true line was established by the surveyor who made the plat. The indication from this variance is that the fences were temporary ones, and were not constructed or intended to be exactly upon the line.

Moreover, an examination of the record convinces us that, according to recent surveys, the fences are not on the true line, but that, as defendant claims, these fences are out in the street. Plaintiff has the laboring oar,

1. DEDICATION: acceptance: public highways: presumption.

as he commenced the action, and must recover on the strength of his own title. This street, as shown on the plat, is 66 feet in width, and it is presumed that, when the public accepted it, its acceptance was of the full width of the street, although it did not, at the time, improve it to its full width. But plaintiff claims that he is entitled to the strip by adverse pos-

2. ADVERSE POSSESSION: public property: highways: limitation of actions.

session, and by reason of defendant's acquiescence in the line as marked by the fence. One trouble with this contention is that the statute of limitations does not run against the town, or against the public; and the doctrine of acquiescence, as between individuals, does not apply where one of the

3. BOUNDARIES: acquiescence: non-application of doctrine to the public: highways.

parties is a governmental agency, and the subject-matter is one in which the public has a vested interest. Such is the holding of our more recent cases. *Quinn v. Baage,* 138 Iowa 426; *Johnson v. City of Shenandoah,* 153 Iowa 493; *Chicago, R. I. & P. R. Co. v. City of Council Bluffs,* 109 Iowa 425; *McClenehan v. Town of Jesup,* 144 Iowa 352; *Bridges v. Incorporated Town of Grandview,* 158 Iowa 402.

There is no estoppel on the part of the town; for the construction of a fence or the planting of trees is not such an improvement as will work an estoppel, on the part of a

4. ESTOPPEL: equitable estoppel: highway boundaries: fences and trees.

town, even if it makes no complaint at the time the fences are built or the trees planted. This is held in many recent cases. See *Bridges v. Grandview,* supra; *Schultz v.*

*Stringer,* 168 Iowa 668; *Biglow v. Ritter,* 131 Iowa 213; *Mc-Clenehan v. Jesup,* supra; *Burroughs v. City of Cherokee,* 134 Iowa 429.

We are satisfied that plaintiff's claim to the ground south of the description of his lots as given in the Lillienthal plat cannot be sustained. As we shall presently see, even if our conclusion here be incorrect, still plaintiff would not be entitled to recover.

As to the alley to the north, plaintiff's counsel concede, in argument, that his claim here must be bottomed upon adverse possession, abandonment, acquiescence or estoppel.

5. DEDICATION: acceptance: want of municipal body to accept.

The statute of limitations will no more run against a claim to an alley than if the claim were to a street; and the same remark may be made regarding the claim of acquiescence, and estoppel by, or upon, the town. There can be no doubt that the original dedicators intended to dedicate an alley on the north side of these blocks, and, for some reason, also held in reserve the additional four feet to the north. Whether this was with the purpose of at some time opening a full street to the north, in the event the adjoining proprietor gave 30 feet off his land, as claimed, is, as we think, immaterial; for, until that time arrived, there was the dedication of an alley, 26 feet in width. It will be noted that there was no legally incorporated municipality having control of the streets and alleys shown on this plat, until the defendant town was incorporated. The alley was, however, dedicated to the public; and user by some of the public of the street and of the alley, would be a sufficient acceptance to hold it, until there was a legally authorized body to take formal charge thereof.

Again, it will be noticed that all the lots were sold with reference to this plat, which showed these streets and alleys; and each and every purchaser had the right to insist upon

6. DEDICATION: operation and effect: public highways.

these alleys and streets' being kept open. If there was, at any time, an acceptance by the public of this alley to the north, so that the

dedication became effectual, neither the public nor the owner of the lots abutting on these streets or alleys could be deprived of them, except upon a proper vacation thereof.  See *City of Waterloo v. Union Mill Co.*, 72 Iowa 437 ; *Taraldson v. Incorporated Town of Lime Springs*, 92 Iowa 187.

The record shows, we think, that, before plaintiff's father built the fence across the west end of his alley, there had been no obstruction thereof at this point, or any other, but

7. HIGHWAYS: abandonment: non-user: effect.

that it had been thrown open to, and used by, the public for nearly 20 years.  The only obstruction now in this alley is plaintiff's fence.  Save for that, it is continuous, and is now made a part of the addition laid out by Mr. Ficke on the north.  Plaintiff admits that there is now a public alley everywhere along the north side of the lots and blocks shown in the Lillienthal plat, save that just north of his (plaintiff's) lots.  There is no room for saying that the public never accepted the dedication, or that the alley has been abandoned.  The fact that it was not thrown open or used from the time plaintiff's father placed his fence across it, is not conclusive upon the town.  Failure of small towns or villages to remove obstructions from streets or alleys, failure to improve them before public convenience requires it, will not amount to either an abandonment or an estoppel.  See cases hitherto cited.  Of course, there may be non-acceptance or abandonment of streets or alleys.  Whether there has been or not is largely a question of fact, dependent upon the intent and purposes of the parties.  As a rule, mere non-user will not constitute either.

II.    Aside from this, there is another proposition which governs the entire case; and that is the conduct of plaintiff and his father with reference to the street and alley.  This

8. HIGHWAYS: adverse possession: recognition of streets: effect.

conduct, although perhaps not amounting to an estoppel, clearly indicates that neither intended to claim either street or alley as their own.  Plaintiff was one of the petitioners for the incorporation of the town of Bettendorf.  Attached to that

petition was a copy of the plat of Lillienthal, being the same plat as that set out in this opinion, showing the streets, alleys, etc. An election having been ordered on this petition, plaintiff was appointed a commissioner, and, in giving notice of the election, the foregoing plat was again referred to, as showing part of the territory to be included in the new town. Again, plaintiff's father, as owner of the lots in Block 3, joined with owners of other lots in said Block 3, owners of lots in Block 4, and owners of lots in Block 1, in a written consent to the vacation of the north 6 feet of the alley in question, and consented that the 6 feet so vacated be added to the land of Ficke on the north. This was some time after the town of Bettendorf had been incorporated. This, it seems to us, clearly indicates that both plaintiff and his father recognized the street and alley, and were not claiming in hostility to the public.

9. PLEADING: issue, proof and variance: evidence must conform to pleading.

III. Joined in plaintiff's petition in his action to quiet title is a claim for damages, stated as follows:

"That, since the date of filing said petition, defendant, by its officers, employees, and agents, has constructed a lateral sewer through and across the north side of plaintiff's tract of land, except Lot 14, described in his said petition, and in so doing destroyed his fences, trees, and shrubs thereon, and dug up the ground, blasted out rock thereunder, and scattered stone over said ground, unfitting it for garden purposes, all to plaintiff's damages in the sum of $2,000.

"2. That the act of defendant in constructing said sewer through and across plaintiff's said land was knowingly and willfully performed, and constitutes a willful trespass thereon, and entitled plaintiff to treble amount of damages so claimed.

"Plaintiff prays judgment and decree against defendant, establishing title in him to said strips of land, for an injunction against defendant restraining interference, and for damages in the sum of $600."

This is bottomed, as we think, and understand it, upon the thought that defendant was a trespasser upon the ground, which was laid out as an alley; and that the injury was to this property, and not to other property as a result of the negligent blasting of rock, etc.  The testimony adduced was somewhat broader than this, but plaintiff must be confined to the allegations of his petition, no matter how broad his proofs.  Finding no trespass upon plaintiff's property, he was not entitled to recover any damages.

The decree seems to be correct, and it is—*Affirmed*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.