ROBERT Y. FYFE v. GREAT NORTHERN RAILWAY
COMPANY.
MARJORY RUTH HILL, INTERVENER.
MYRON H. SAVIDGE, LIEN CLAIMANT, RESPONDENT.[1]

March 14, 1947.

No. 34,307.

[1]Reported in 27 N. W. (2d) 147.

340

See, 222 Minn. 490, 25 N. W. (2d) 219.

*Doherty, Rumble, Butler, Sullivan & Mitchell* and *Harold Jordan*, for appellant.

*R. J. McDonald, William H. DeParcq*, and *Donald T. Barbeau*, for plaintiff-respondent.

Frank T. Gallagher, Justice.

This appeal involves the distribution of a fund of $10,500 paid to the clerk of the district court of Hennepin county by defendant railway company as damages for the wrongful death of Mary Ellen Fyfe, which occurred in the state of North Dakota.

Plaintiff, Robert Y. Fyfe, was the husband of decedent. In his individual capacity and as special administrator of her estate, he sued the railway company for the wrongful death of his wife arising out of a train wreck on August 9, 1945, at Michigan, North Dakota. Marjory Ruth Hill, a daughter of Mary Ellen Fyfe by a former marriage, sued in intervention, claiming to be the sole surviving child of decedent. One Myron H. Savidge, an attorney of Detroit, Michigan, filed a lien claim against plaintiff for alleged services rendered. Before trial of the wrongful death action, plaintiff, de-

fendant, and intervener stipulated that the clerk of court should enter judgment for $10,500 against defendant in favor of intervener and of plaintiff in his individual capacity and as special administrator; that defendant should pay that sum to the clerk to satisfy the judgment; and that said sum should be held by the clerk and the ownership thereof as between the parties, including the lien claimant, should be determined by the court. Judgment was entered pursuant to the terms of the stipulation, and the court proceeded with the taking of evidence on the issue of ownership of the fund. Plaintiff appeared in person at the trial; testimony on behalf of intervener was by deposition. Thereafter the court made findings of fact and conclusions of law awarding judgment to plaintiff in the sum of $5,500, out of which sum he was to pay the lien claimant; to intervener the sum of $1,500; and $3,500 to Robert J. McDonald and William H. DeParcq, attorneys employed by plaintiff. The distribution was made under North Dakota Revised Code, 1943, § 32-2104, hereinafter quoted.

Intervener moved for amended findings of fact and conclusions of law or, in the alternative, for a new trial, and appealed from the order denying her motion. Subsequent to this order and during the pendency of her appeal, intervener moved this court to remand the case to the trial court to enable her to renew her motion for a new trial on the ground of newly discovered evidence arising during the pendency of the appeal. The motion was granted. Fyfe v. G. N. Ry. Co. 222 Minn. 490, 25 N. W. (2d) 219. The case was remanded for that purpose, and on December 10, 1946, the trial court denied the motion, whereupon the order denying the new trial was certified to this court without the proceedings relating thereto as provided for in the order remanding. Inasmuch as no appeal has been taken from the order of the trial court dated December 10, 1946, we are not considering it in this decision.

■ Intervener contends that plaintiff's suit was not the kind of representative action contemplated by the North Dakota statute; that it is a personal suit and not a representative action. It is argued that his appearance as special administrator is without statu-

tory authority, since the statute gives "the daughter [intervener] a prior right to sue before the decedent's personal representative [plaintiff]." Intervener also claims that the trial court erred in awarding $3,500 as fees to plaintiff's attorneys. In deciding, we must first refer to the provisions of the North Dakota Revised Code, 1943, under which plaintiff brought the action here involved. Section 32-2103 thereof provides:

"The action shall be brought by the following persons in the order named:
"1. The surviving husband or wife, if any;
"2. The surviving children, if any;
"3. The surviving mother or father;
"4. The personal representative.
"If any person entitled to bring the action refuses or neglects so to do for a period of thirty days after demand of the person next in order, such person may bring the same."

Plaintiff brought the wrongful death action "in his individual capacity and as Special Administrator." Intervener joined in the stipulation for entry of judgment in this action "in favor of Robert Y. Fyfe, in his individual capacity and as Special Administrator of the Estate of Mary Ellen Fyfe, Deceased [plaintiff], and Marjory Ruth Hill [intervener]." The person entitled to bring the action had the right to compromise the same under § 32-2106, which provides:

"The person entitled to bring the action may compromise the same, or the right thereto, and such compromise shall be binding upon all persons authorized to bring the action or to share in the recovery."

The trial court found that "Robert Y. Fyfe was the proper party to bring * * * and * * * compromise" the wrongful death case.

Considering the language of the statute and having in mind that after plaintiff brought the wrongful death action in his individual capacity and as special administrator intervener joined in the stipulation for entry of judgment in favor of plaintiff in his individual

capacity and as special administrator and in favor of intervener, we cannot now hold that plaintiff's appearance in such dual capacity was improper.

With reference to intervener's objection to the court's allowance of attorneys' fees, it appears that if plaintiff had the authority to sue he had the right to retain attorneys to institute the action and to pay them for their services. 2 C. J. S., Agency, § 105 (d) (1), and cases under note 96, p. 1264. Plaintiff entered into a contract with his attorneys and agreed "to pay them for said services 33 1/3% of the amount finally recovered either by way of suit or settlement." Intervener claims, however, that the attorneys selected by plaintiff were representing his interests only and not hers. The record shows that the attorneys retained apparently did considerable work over a period of about six months in preparing pleadings, holding conferences, making appearances in court, taking depositions, and effecting a settlement of the wrongful death case which was agreeable to both plaintiff and intervener. The latter was also represented in connection with this settlement by her own attorneys. She must have known of some of these services on the part of the attorneys retained by plaintiff, since she joined with plaintiff in the stipulation providing for the settlement and thus placed herself in a position to receive all or part of the fruits of the compromise. Attorneys frequently expend a great deal of time and effort unbeknown to clients in bringing about satisfactory settlements of pending litigation. In view of these facts and circumstances and the further finding of the court that out of the fees received the attorneys expended $1,280.98 in connection with the taking of depositions and matters pertaining to the litigation, we believe that the findings of the trial court on this phase of the case should be sustained.

■ Intervener also questions the distribution made as between herself and plaintiff. She argues that "the evidence taken as a whole furnished no substantial support for the finding of the trial court that plaintiff had sustained a pecuniary loss by reason of the death of his wife," and that the "finding that intervenor had sustained no more than a 'doubtful' pecuniary loss" is without adequate eviden-

tiary basis. In reviewing these matters, we must first make clear the status of the case as it is now before us. If plaintiff's wrongful death case against defendant had been tried before a court and jury and the jury had found for plaintiff, it would have been required under § 32-2102 to "give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery." The court would then proceed under § 32-2104, which provides:

"The amount recovered shall not be liable for the debts of the decedent, but shall inure to the exclusive benefits of his heirs at law in such shares as the judge before whom the case is tried shall fix in the order for judgment, and for the purpose of determining such shares the judge after the trial may make any investigation which he deems necessary."

In the case before us, the settlement of the wrongful death action precluded the necessity of a jury determination of the liability and amount of damages, since the parties themselves fixed the damages suffered by the heirs at law of Mary Ellen Fyfe. The stipulation between the parties hereinbefore referred to provided "that the ownership of said sum" of $10,500 "shall be determined by the above Court." The responsibility of the trial court was limited to a determination of the division of this fund as between plaintiff and intervener, the only persons entitled to share in the balance remaining after payment of expenses and attorneys' fees. Viewed in this light, it becomes apparent that the duty of the trial court was to determine the relative or comparative loss suffered by the disputants rather than the actual compensation, if any, to which each would have been entitled in the absence of the stipulation for settlement. In making its decision, the trial court properly considered such facts as the following:

Plaintiff and his wife were married in 1930 and lived together in Detroit for about 15 years. They had one daughter, aged 11, who was killed in the same accident as her mother. (The action for the wrongful death of the child is not involved in this proceeding.) Plaintiff was the manager of a store in Detroit. His wife worked

outside the home about half the time during their married life. They owned their own home and had accumulated some savings, which they kept in a joint account. Plaintiff testified:

"When we lived together deceased took care of my clothing and performed services like a wife would around the house. When she was working steady, clothes were sent to the laundry, and stuff like that, but she usually did the general housework."

They apparently got along well until sometime in 1944, when marital troubles developed. On March 13, 1945, they separated, and the next day each filed suit for divorce against the other. Plaintiff's action was filed shortly before his wife's and took precedence, her action being held in abeyance. The divorce decree had not been entered by the court in Detroit at the time plaintiff's wife was killed. Plaintiff testified that he and his wife had become reconciled before she left on her fatal trip to North Dakota, but intervener produced testimony contradicting this claim. Intervener worked part of the time while attending high school and was self-supporting most of the time after completing school in 1939. She was married in 1940 at the age of 18, lived with her husband about two weeks, and was divorced in 1941. She was employed in a private home in Detroit and was earning $120 per month with board and room at the time of the trial.

We believe that considerable latitude must be given the trial court in making division of the proceeds of a settlement for a wrongful death action premised on the North Dakota statutes, not only because of the general rule which compels us to consider the evidence in the light most favorable to the prevailing party (see, Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. [2d] 337), but also because of the language of § 32-2104, previously quoted. The distribution should be sustained if reasonably supported by the evidence.

"When an action is tried by a court without a jury its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. * * * The question for the appellate court is whether the evidence as a whole reasonably tends to support the

findings. If it does they should not be disturbed." 1 Dunnell, Dig. & Supp. § 411, and cases cited.

We conclude that the findings and conclusions with respect to the division made are adequately sustained, and the decision of the trial court is affirmed.

Affirmed.

