# VILLAGE OF NEWPORT v. GEORGE E. TAYLOR AND OTHERS.[1]

January 16, 1948.

No. 34,226.

[1]Reported in 30 N. W. (2d) 588.

*Edward A. Knapp,* for appellants.
*Joseph M. Donahue* and *Clifford W. Gardner,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for amended findings or a new trial.

The village of Newport brought this action for a decree ordering defendants to remove obstructions from a street in that village and enjoining them from maintaining such obstructions. Plaintiff's complaint alleged a conspiracy on the part of defendants, but when no cause of action in conspiracy had been proved when plaintiff rested its case the parties stipulated that the trial should continue for the purpose of having the court determine the rights of the respective parties in and to the street.

The street here involved is First street, which by virtue of the original plat of the village of Newport was duly laid out, platted, and dedicated in 1857 as a public street of a specified width of 60 feet. Although in existence for nearly 90 years, it has never been improved or officially opened to public travel. On the other hand, it has never been vacated. First street runs in a north-south direction, roughly parallel to the Mississippi River, and is the first village street east of that river.

Defendants are the owners of lots abutting on both sides of First street. None of them held title to any of this property prior to the enactment of L. 1899, c. 65, prohibiting the occupant of a public way from acquiring title thereto by adverse possession. The earliest acquisition of title was by defendant Christine Verrier in 1903. Since acquiring title, each defendant has used First street as a part of his own property. Some have placed sheds and chicken coops thereon, while others have put in fences and gardens. Some have installed pumps, water systems, and cesspools in the street area. In 1942, defendants joined in a petition to the village council requesting the vacation of First street. The petition was denied, and defendants were ordered by the council to remove from the street any fences, sheds, or other obstructions belonging to them. The refusal by defendants to do so and their assertion of title to the street right of way resulted in this lawsuit.

Defendants' claim to title is based on three grounds: (1) That defendants' predecessors in title prior to 1899 had by adverse possession destroyed plaintiff's easement for street purposes; (2) that plaintiff has lost its easement by abandonment of the street; and (3) that by long nonuser, with acquiescence in the concurrent occupancy of the street by defendants, plaintiff is estopped to assert its easement.

The trial court found that defendants had failed to establish any of these defenses. There is no claim that the conclusions of law do not follow from the findings of fact. The only question is whether the findings and conclusions are sustained by the evidence.

L. 1899, c. 65, prohibits the occupant of a public way which has been dedicated to public use from acquiring title thereto by adverse possession. See, 1 Dunnell, Dig. & Supp. § 111. Therefore, defendants were obliged to show that the claimed adverse possession ripened into full title before 1899. The only witness who had any knowledge from personal memory and observation of the condition of the street for a period of 15 years prior to 1899 was Mrs. Verrier, one of the defendants. She testified that the part of the street on which the lots owned by defendant George E. Taylor fronted was fenced and used as a pasture for over 15 years prior to 1899; that that part of the street on which the lots owned by defendant Ralph W. Richardson fronted had been partially obstructed by a warehouse located partly in the street, but the warehouse was not placed there until about 1886. Therefore, this occupancy was for a period of less than 15 years prior to 1899. Mrs. Verrier could not recall who occupied the lots now owned by defendant Matt N. Weber before 1899, but she did recall that cattle and horses were at times staked in the street. Who owned the livestock or under what claim they were kept there she did not know. In 1889, one Holden E. Siegert acquired title to the Weber lots, and thereafter he placed a chicken coop and certain plastering equipment in the street. Siegert's intrusion upon the street was for less than the required 15 years. The part of the street on which the lots owned by defendant Ramby C. Rasmussen fronted had been used as a pasture before 1889. At one

time a railway construction crew erected a bunkhouse in the street, where it remained for about six months. On the lots owned by defendant Clinton E. Belden was the Stevens dwelling house, which from 1882 extended about three feet into the street until it was destroyed by fire at a time which may have been five or more years prior to 1900. The house was old in 1882, but there is no direct testimony as to how long it had stood on the same location. Mrs. Verrier's lots were bought in 1903 from the Diamond Jo Steamship Line. From 1883 until 1899, that company maintained a warehouse on the riverbank west of First street. From this warehouse to a ramp on the east side of First street extended a wooden footbridge, over which merchandise was carted to and from the warehouse. The bridge, which was from six to nine feet high, crossed First street and was supported by wooden pillars, some of which were in the street. The bridge appears to have been in place from 1883 until after 1899.

We cannot quarrel with the trial court's findings that there was insufficient evidence to support a claim that adverse possession had ripened into full title prior to 1899. We are governed by the well-recognized rule that adverse possession may be established only by clear and positive proof based on a strict construction of the evidence, without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him. The burden of proving the essential facts which create title by adverse possession rests upon the disseizor. St. Paul & Duluth R. Co. v. City of Duluth, 73 Minn. 270, 76 N. W. 35; Hoverson v. Hoverson, 216 Minn. 228, 12 N. W. (2d) 501; 1 Dunnell, Dig. & Supp. § 127, and cases cited. The evidentiary way of the disseizor is hard. Obviously, the evidence in the instant case does not furnish the clear and positive proof required. The possession of the disseizor must be shown to be hostile,[2] open, actual,

[2]There is no justification for qualifying the term "hostile" by saying that the possession must be hostile *and under a claim of right*. The disseizor need not have entered into possession under any claim of right, and his good faith or bad faith is immaterial. The use of the words "under claim of right" is

continuous, and exclusive, and the absence of any one of these essential elements is fatal to the establishment of adverse possession. Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482; 1 Dunnell, Dig. & Supp. § 113. Mrs. Verrier's testimony, as well as that of the other witnesses, provides no positive evidence that the possession was either hostile or exclusive for the statutory period. We cannot, for example, say that the erection and maintenance of the wooden footbridge over the street was hostile and exclusive. It may be presumed that a bridge from six to nine feet high is not necessarily a barrier to travelers on the street. .Because the Stevens house was old in 1882, we cannot draw an inference that it had stood on the same location for any appreciable time prior to that year. To support the claim of adverse possession under the testimony given would require the court to engage in speculation and in the drawing of inferences in favor of defendants. This we cannot do. It should further be noted that in order to establish the 15-year statutory period prior to the enactment of L. 1899, c. 65, it was necessary to go back to March 18, 1884, at which time the principal witness, Mrs. Verrier, was only ten years old. The accuracy of her recollection of events occurring at this early age could best be determined by the trial judge, in whose presence she testified.

■ Regardless of the status of the evidence, defendants are in no position to establish that the possession of their predecessors in title was hostile. First street, as previously noted, has never been improved or officially opened to the public since its dedication in 1857. In Pierro v. City of Minneapolis, 139 Minn. 394, 395, 166 N. W. 766, we held:

"* * * It is settled law in this state that when a street is dedicated by plat, the city may choose its own time to occupy, open and use the street, and until it does so, possession of the street by the abutting owner is not regarded as hostile and the statute of limitations will not commence to run."

redundant, inaccurate, and misleading. See, Carpenter v. Coles, 75 Minn. 9, 77 N. W. 424; Cain v. Highland Co. 134 Minn. 430, 159 N. W. 830; 4 Tiffany, Real Property (3 ed.) § 1147.

In the earlier case of St. Paul & Duluth R. Co. v. City of Duluth, 73 Minn. 270, 275, 76 N. W. 35, 43 L. R. A. 433, with respect to a platted but unopened street, the court said:

"* * * Hence persons in possession of such platted streets, or part of them, will, until the time arrives when such streets are required for actual public use, be presumed to hold subject to the permanent right of the public."

▆▆▆▆ Here, we have no evidence of abandonment other than that of nonuser. Abandonment is a question of intention, and nonuser is only an evidentiary fact aiding in its determination. Mere nonuser for any length of time will not operate as an abandonment of a public street. Stadtherr v. City of Sauk Center, 180 Minn. 496, 231 N. W. 210.[3] Nor will nonuser, coupled with failure to remove obstructions erected by abutting property owners or others, constitute abandonment. Steele v. Fowler, 111 Ind. App. 364, 41 N. E. (2d) 678; Kuehl v. Town of Bettendorf, 179 Iowa 1, 161 N. W. 28; 4 McQuillin, Municipal Corporations (Rev. 2 ed.) § 1516; see, St. Paul & Duluth R. Co. v. City of Duluth, 73 Minn. 270, 76 N. W. 35, *supra*. An intention to abandon is not established by negative or equivocal acts. Long-continued nonuser, in order to constitute abandonment of a public street dedicated to public use pursuant to statute, must originate in or be accompanied by some affirmative or unequivocal acts of the municipality indicative of an intent to abandon, and inconsistent with the continued existence of, the easement. See, Annotations, 5 L. R. A. 652, 26 L. R. A. 449, and 1 A. L. R. 886.[4] Here, we have no affirmative acts indicating abandonment. He who asserts abandonment of a street bears the burden of proof. This burden has not been sustained by defendants. Freeman v.

[3]See, Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247; G. N. Ry. Co. v. City of St. Paul, 61 Minn. 1, 63 N. W. 96; Freeman v. Township of Pine City, 205 Minn. 309, 286 N. W. 299; City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. (2d) 361; 4 McQuillin, Municipal Corporations (Rev. 2 ed.) §§ 1516, 1735.

[4]See footnote 5, *infra*, p. 306.

Township of Pine City, 205 Minn. 309, 286 N. W. 299.[5]

Defendants assert that, aside from any question as to loss of easement by adverse possession or by abandonment in fact, plaintiff is estopped to assert its easement by reason of long-continued nonuser, coupled with acquiescence in defendants' concurrent occupancy of the street. The shield of estoppel is not available to them. In Steele v. Fowler, 111 Ind. App. 364, 373, 41 N. E. (2d) 678, 682, the court said:

"The doctrine of estoppel is not applicable to municipal corporations as freely and to the same extent that it is to individuals. When it is applied, the basis of application is usually not because of the nonaction of the officers of the municipality, but because they have taken some affirmative action influencing another, which renders it inequitable for the corporate body to assert a different set of facts." See, 19 Am. Jur., Estoppel, § 168.

Clearly, mere nonuser, a form of nonaction, is insufficient to provide a basis for estopping a municipality. The reason for this rule was expressed by Mr. Justice Mitchell in Parker v. City of St. Paul, 47 Minn. 317, 318, 50 N. W. 247, 248:

"* * * The rights of the public are seldom guarded with the degree of care with which owners of private property guard their rights, and, consequently, acts or omissions which might weigh heavily against private persons cannot always be given the same force against the public. Moreover, streets, levees, and the like are often laid out on land acquired for or dedicated to such purposes with reference to future as well as present requirements, and therefore it is not legitimate to assume that the property has been abandoned merely because it has not yet been used by the public."

Long nonuser, although accompanied by acquiescence by a municipality in the occupancy of a platted but unopened street by abutting

---

[5]In Doyle v. Babcock, 182 Minn. 556, 235 N. W. 18, involving the revocation of a common-law dedication of a street before it had been accepted by the public, it was intimated that abandonment may be established more readily when the dedication is by common law instead of by statute.

property owners, is insufficient without more to raise an estoppel against the municipality, in that such occupants are presumed to hold possession subject to the permanent rights of the public. St. Paul & Duluth R. Co. v. City of Duluth, 73 Minn. 270, 76 N. W. 35; Pierro v. City of Minneapolis, 139 Minn. 394, 166 N. W. 766. The doctrine of acquiescence, as between individuals, does not apply where one of the parties is a governmental agency and the subject matter is a street easement in which the public has a vested interest. Kuehl v. Town of Bettendorf, 179 Iowa 1, 161 N. W. 28. In order to raise an estoppel *in pais* against a municipality, there must, in addition to nonuser and acquiescence, be some affirmative or unequivocal act of the municipality which, in view of all the circumstances, induced a third person reasonably to believe in and to rely upon such act as constituting a representation of an intent in fact to abandon the street, which representation of abandonment, were the municipality now permitted to deny it as not conforming to actual fact, would cause substantial injury to such third person, who in good faith relied thereon.[6] We have no evidence here of any affirmative acts or representations upon which defendants could possibly have relied as the basis for an estoppel.

As illustrative of the essentials necessary to raise an estoppel against a municipality, we have the recent decision of City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. (2d) 361. The actual rule of the Rochester case is to be determined in the light of the facts involved therein. The city brought suit to enjoin the maintenance and to compel the removal by defendants of certain buildings located in or on Broadway street north. This street, as platted in 1857, extended in a north-south direction. The street as physically laid out and constructed deviated from its physical location by a curve running first east and then west back to the platted course. The buildings sought to be removed were located in part upon the platted street, which because of a deviation in the constructed route

---

[6]As to unauthorized acts of municipal officers and agents, see The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; 2 Dunnell, Dig. & Supp. § 3211.

had been left unopened and unimproved. One of these buildings had been there for over 40 years. Defendants and their predecessors in interest had erected these buildings in good faith and in reliance upon certain affirmative acts indicating an abandonment of the street area in question. These affirmative acts, which in addition to long-continued nonuser provided a basis for an estoppel, were: (1) The actual physical relocation of the street and its improvement and maintenance as relocated over a period of many years; (2) the laying of municipal sewers and water mains in the street as relocated; and (3) the issuance by the city of Rochester of building permits authorizing defendants and their predecessors to erect the buildings in question upon the unoccupied though platted street area. Clearly, the Rochester case is of no comfort or aid to defendants.

In the words of the trial court, it is indeed unfortunate that these defendants made such extensive improvements before determining what, if any, rights they had to the street.

The order of the trial court is affirmed.

Affirmed.