THEODORE BJERKETVEDT AND ANOTHER v.
EMIL JACOBSON AND ANOTHER.[1]

November 10, 1950.

No. 35,188.

[1]Reported in 44 N. W. (2d) 775.

*Magnus Wefald,* for appellants.
*Dell, Rosengren & Rufer,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment rendered by the trial court in favor of plaintiffs in an action to determine a boundary line and adverse claims to land. Defendants moved for amended findings or for a new trial. The motion for a new trial was denied, but an amendment with respect to the location of the boundary line was granted. Judgment was thereupon entered, and this appeal followed.

The lands, the boundary between which is in dispute, are the S½ of NW¼ of section 4 owned by plaintiff Theodore Bjerketvedt; the S½ of NE¼ of section 4 owned by plaintiffs Theodore Bjerketvedt and Thale Bjerketvedt as joint tenants; and the NW¼ of SE¼ and the SW¼ of section 4 owned by defendants. All of the above lands are in township 131, range 39, Otter Tail county. The parties have a common boundary from the west section line east

for three-fourths of a mile. This boundary line separates the land of plaintiffs to the north and defendants to the south. Beginning on the west section line, the land between the section lines can be referred to as the westerly, middle, and easterly forties. The boundary of the last quarter mile of the center line of the section is not in dispute.

The present dispute over the boundary line arose as a result of defendants' attempt to establish a fence line somewhat to the north of the line set out above, whereupon plaintiffs sought and procured an injunction enjoining defendants from continuing with the erection of fence posts pending the outcome of an action to determine the boundary line and adverse claims to the land.

Defendants made numerous assignments of error as to the admission of evidence and rulings of the court, as to its findings and conclusions of law, and as to its failure to amend the findings and conclusions in accordance with defendants' motion. Defendants contend that the trial court disregarded the survey prepared by the surveyor at their request. The record reveals that there was some dispute as to the accuracy of this survey, which fact the court had a right to consider. Plaintiffs claim that defendants, by their amended answer, abandoned any claim to a boundary other than that located by government survey. However, defendants contend that in the event the survey made by defendants' surveyor was not correctly made the court could designate the boundary to be farther south than the survey line and north of the line claimed by plaintiffs.

The trial court found that the boundary line separating the easterly forties had been established by practical location approximately 40 to 50 years prior to the commencement of this action and that for all of that period and longer it had been identified and determined by a wire fence, extending in a generally east-west direction between the easterly forties, on trees and posts, and was taken and accepted by all the parties and their predecessors in interest as the boundary line separating their forties. The trial

court also found that extending west from the west end of the fence and as a boundary line between the middle and westerly forties there had been from approximately 40 to 50 years prior to the commencement of this action a well-defined and readily identifiable boundary line practically established and visible upon the ground, comprising a ridge of sod, taken by all the parties to be the boundary between the middle and westerly forties; that for more than 15 years last past prior to the commencement of this action plaintiffs and their predecessors in interest had used the land to the north of said fence which separates the easterly forties and the said ridge of sod which is visible upon the ground and runs generally in an east-west direction separating the middle and westerly forties, cropped it, cut firewood, raised plums, pastured it, and generally utilized the land for the purpose for which it was suited; that defendants made similar use of the land to the south of said fence which separates the easterly forties and the said ridge of sod which is visible from the ground and runs generally in an east-west direction separating the middle and westerly forties; and that for more than 15 years last past prior to the commencement of the action such possession and use by plaintiffs to the north and defendants to the south was actual, open, continuous, exclusive, and hostile to any title or claim of right by any and all other persons.

In its conclusions of law the court said in part:

"That plaintiffs are entitled to the judgment and decree of this Court adjudging and decreeing that the fence line as now erected and maintained is the boundary line separating the property of plaintiffs and defendants between the southwest quarter of the northeast quarter and the northwest quarter of the southeast quarter in said section four, township one hundred thirty-one, range thirty-nine; that the boundary line separating the property of plaintiffs and defendants between the south half of the northwest quarter and the southwest quarter, in said section four, is the ridge of sod which runs generally in an easterly and westerly direction and which is evident upon the ground; that upon application to

this Court by either party that permanent monuments shall be placed in a said line in accordance with the statute at the easterly and westerly ends thereof at approximately 80-rod intervals; that the permanent monuments in the line separating the middle and westerly forties shall be placed approximately in the center of the said ridge of sod evident upon the ground."

The applicable rules of law are not seriously in dispute between the parties. The burden of proving the essential facts which create title by prescription rests upon him who asserts it. Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588; Simpson v. Sheridan, 231 Minn. 118, 42 N. W. (2d) 402. In a boundary-line controversy, the practical location of the boundary lines can be established by showing that the location relied upon has been acquiesced in for a sufficient period of time under the statute of limitations to bar right of entry. Phillips Petroleum Co. v. Selnes, 223 Minn. 518, 27 N. W. (2d) 553; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038; Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788. A boundary is established by adverse possession where the disseizors or predecessors in title, for at least 15 years prior to the commencement of the action, have been in hostile, open, actual, continuous, and exclusive possession of the premises. Village of Newport v. Taylor, 225 Minn. 299,[2] 30 N. W. (2d) 588.[3] It is not necessary that the disseizor should enter under color of title or should either believe or assert that he had a right to enter. All that is necessary is that he enter and take possession of the lands the same as though they were his own and with the intention of holding for himself to the exclusion of all others. Carpenter v. Coles, 75 Minn. 9, 77 N. W. 424. The important question is whether it was with adverse and hostile intent. To be so, it need not be under color of title or under claim of actual right. Cain v. Highland Co. 134 Minn. 430, 159 N. W. 830.

[2]See, 225 Minn. 303, note 2.
[3]See, 30 N. W. (2d) 591, note 1.

■ We are confronted here primarily with a fact issue. We have repeatedly said that the supreme court interferes with the findings of the trial court only where the evidence taken as a whole furnishes no substantial support for them or where it is manifestly or palpably contrary to the findings. 1 Dunnell, Dig. & Supp. § 411; Fyfe v. G. N. Ry. Co. 223 Minn. 339, 27 N. W. (2d) 147.

Defendants concede in their reply brief that while there may have been some evidence reasonably tending to support the court's findings the evidence as a whole is manifestly and palpably contrary to the findings, and for that reason this court should reverse the decision of the trial court.

The evidence in this matter is conflicting and at times confusing because of the fact that some of the witnesses testified with reference to their recollection of the location of fences and other marking designations covering periods as far back as 40 or 50 years. It was more or less conceded by plaintiffs in their argument before this court that the conflicting evidence was such that the trial court might have found differently in this matter, but they contend that the evidence as a whole reasonably supported the findings. Our examination of the evidence satisfies us that the question of the location of the boundary line is a close one, but, viewing the evidence in the light most favorable to the prevailing party, as we are compelled to do, we must agree that there was evidence reasonably tending to support the findings of the trial court and that as a whole it was not manifestly and palpably contrary to the findings. For that reason, the decision of the trial court must be sustained. To return the matter for a new trial would appear to us simply to involve additional expense for all parties concerned. It is unfortunate that neighbors and friends of such long standing cannot agree among themselves on controversies such as this, since too often the expense involved is greater than the value of the land in dispute.

Because of the able manner in which they were urged by their attorney, we shall consider several contentions made by defendants. They claimed that the original occupation of the land was per-

missive and that no subsequent adverse holdings had been declared or brought to the knowledge of the owners so that the title by adverse possession could not have been established. For this, defendants rely particularly upon the testimony of Mrs. Martin Olson, a sister of defendants. She was 67 years of age at the time she testified and said that she remembered the time that Bjorklund built the old fence on the east forty in 1889 or 1890, when she was about nine or ten years old. Madsen then lived on the land north of the east forty. She said that she also remembered the fence on the middle forty and that it was joined to the fence on the east forty by a long gate which "went diagonally." She said that in 1900 Madsen built a fence which connected with her father's fence on the east forty, and that before constructing and connecting his fence with the Jacobson fence Madsen went to see Broderus Jacobson. Mrs. Olson, who was about 19 years of age at the time of this incident, claims that a few days after Madsen talked with her father she talked with Madsen. Because of the fact that defendants claim this testimony was in no respect refuted or controverted by any testimony or evidence on the part of plaintiffs, we quote her conversation with Mr. Madsen in part as follows:

"A. Well, he was in his shop and he called to me; 'Good day,' he says, and come out of his shop and started to talk to me; and I just noticed his fence; and I said, 'you certainly put up that fence in a hurry'; 'oh, well,' he says, 'it wasn't much of a job; you know I just—you know after I got permission from your father to hook up to his fence, I just hung up this fence from my fence over here and over to his fence.' "

While this testimony was admitted over the objection of plaintiffs as being too remote, defendants claim that it clearly shows the permissive use of that part of the east forty between the old fence and the true boundary line farther north. We have respectfully considered Mrs. Olson's testimony, but it must be remembered that part of it involved recollections going back almost 60 years and other parts for approximately 50 years. Considering her testi-

mony as a whole in the light most favorable to plaintiffs, we cannot say that it showed clearly the permissive use of that part of the east forty between the old fence and the claimed true boundary line farther north, but rather it appears to us that whatever permissive right Madsen was attempting to explain to Mrs. Olson involved only the permission he received "to hook up to his fence."

Defendants contend also that the trial court erred in admitting testimony and evidence concerning the use and occupation of lands located east and west of the land in dispute and not involved in this controversy. Here, again, we have a trial of issues of fact before a court without a jury. The rule there is that where issues of fact are tried by the court without a jury and incompetent evidence is admitted, but the competent evidence is sufficient to support the findings of fact and there is no reasonable ground for inferring from the character of the incompetent evidence that it was or might have been a material factor in the court's determination of the facts, the admission of such evidence is not reversible error. Mankato Mills Co. v. Willard, 94 Minn. 160, 102 N. W. 202. Whether the testimony was incompetent or was erroneously admitted is not decisive in the instant case in view of the fact that the record as a whole appears to us to contain sufficient evidence to support the order for judgment. For the above reasons, the judgment of the trial court must be affirmed.

Affirmed.