# IN RE APPLICATION OF LUCILE MILLER AND ANOTHER TO REGISTER TITLE TO LAND.
## LUCILE MILLER AND ANOTHER v. GEORGE JOSEPH MARTIN.

106 N. W. (2d) 549.

December 9, 1960—No. 38,012.

*Jansen, Nardi & Scanlan,* for appellant.
*John F. Thoreen,* for respondents.

DELL, CHIEF JUSTICE.

This is a proceeding for registration of title under the Torrens Act. Defendant appeals from a decree in favor of the applicants.

The land in question borders on Lake St. Croix and is a parcel consisting of parts of Government Lots 1 and 2, sec. 35, T. 29, R. 20, in Washington County, Minnesota. The government lot line crosses the parcel in a general east-west direction. For convenience the northerly part of the land, lying within Government Lot 1, will be referred to as Tract A, and the southerly part, lying within Government Lot 2, as Tract B. It is this latter tract which is in dispute.

Applicants' title to both tracts is derived from a state tax assignment certificate issued to their predecessors in interest in 1921. About 1924 the father of Laverne Miller, one of the applicants, began operating a commercial fishery on the premises. A fish house was built on the southerly part of Tract A but no building was ever erected by applicants or their predecessors upon Tract B. In 1929 Miller's father started a boat livery service using all of the shoreline of both Tracts A and B.

Sometime during the 1930's a rod and gun club, known as the Blue Ribbon Club, built a summer cottage on Tract B. There was a stone wall between the cottage and the lakeshore about 25 feet to the east of the cottage. Applicants and their predecessors in interest used the land from the shoreline to this wall for their boat livery service and, in times of high water, occasionally used the land west of the wall and around the cottage in pulling up their boats. However applicants did not know that the cottage was on their land until they had the property surveyed in 1954.

Prior to the instant application both parties, through their predecessors in interest, had been paying the taxes on the disputed tract under different descriptions.

■ The defendant contends that, as the successor in interest to the Blue Ribbon Club, he obtained title to Tract B by adverse possession.[1] In order to prevail it was necessary for him to prove, by clear and convincing evidence, that he and his predecessors in interest exercised hostile, open, actual, continuous, and exclusive possession for a period of 15 years.[2]

The defendant's evidence consisted primarily of testimony elicited from Laverne Miller on cross-examination. Miller testified that the cottage was built by the Blue Ribbon Club "sometime during the 30's," although he was not positive as to the year; that until 1941

---

[1]Although not specifically pleaded in the defendant's answer, title by adverse possession may be proved under a general allegation of title in fee. Speer v. Kramer, 171 Minn. 488, 214 N. W. 283.

[2]Minn. St. 541.02; Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588; Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775; Engquist v. Wirtjes, 243 Minn. 502, 68 N. W. (2d) 412.

the cottage was used "Maybe once a month or on week ends sometimes"; and that from 1941 to 1950 it was used "very little." In 1950 the cottage was sold to Mr. and Mrs. Francis DeMarre who conveyed it in 1956 to the defendant. After 1950 it was locked up and used only rarely.

This evidence is wholly inadequate to satisfy the defendant's burden of proof. Even if we were to assume that, because of the nature of the property, the use by the Blue Ribbon Club until 1941 could be considered "continuous,"[3] there was no showing that such use continued for the required period of time. Miller's testimony that the building was erected "about 1935" although he was "not positive" cannot be considered clear and convincing evidence that the building was in fact erected in 1935 or earlier as would be necessary to establish the 15-year period.

The record is also inadequate as to the extent of occupancy of the land by the Blue Ribbon Club; whether such occupancy was hostile; and the manner in which the defendant claims privity with the club. The conclusion reached by the trial court that the defendant did not acquire title by adverse possession is amply supported by the record.

■ Much of the defendant's argument deals with the failure of the applicants' evidence to establish adverse possession on their part. The existence of a valid record title in the applicants is not disputed. Consequently the burden rested upon the defendant, as disseizor, to establish the essential facts to create title by adverse possession.[4] In view of the defendant's failure of proof it is immaterial whether the applicants made out an adequate case of title by adverse possession.

Affirmed.

---

[3]See, Annotation, 24 A. L. R. (2d) 632.
[4]Simpson v. Sheridan, 231 Minn. 118, 42 N. W. (2d) 402.