AMOS H. BICE v. TOWN OF WALCOTT.[1]

May 21, 1896.

Nos. 10,021—(287).

#### Highway—Prescription—Abutting Owners.

A. and B. owned adjoining 40-acre subdivisions, and for 21 years occupied to a line which each supposed was the true line between them, but which was in fact more than two rods in upon the land of B. In the meantime the town laid out a public highway on the true line, but opened it for travel on said supposed line, where it was traveled by the public for 14 years, when the town, within 15 years after the highway was so laid out, opened it for travel on the true line. *Held*, conceding that, as between A. and B., the 15-year statute of limitations had run in favor of A. as to the strip of land occupied by him between the true line and the road as traveled, still it had not run in his favor as against the public or the defendant town.

#### Same—Statute of Limitations against Public.

The statute of limitations (G. S. 1894, § 1832) runs in favor of the public and against the abutting private owner in six years. *Held*, it does not follow that by analogy the limitation in favor of the private owner and against the public should, in such a case as this, be six years.

#### Same—Laches.

*Held*, the public had not, by laches or acquiescence, lost its right to open the road on the true line.

Appeal by plaintiff from a judgment of the district court for Rice county, in favor of defendant, entered in pursuance of the findings and order of Buckham, J. Affirmed.

[1] Reported in 67 N. W. 360.

*H. S. Gipson,* for appellant.
*Thomas H. Quinn,* for respondent.

CANTY, J.   For many years prior to 1879 a public highway extended diagonally across a certain 40-acre tract of land southwesterly from the northeast corner of the 40.   This is the southwest 40 of the quarter section, and was then owned and occupied by one Olson, while the northwest 40 was then owned and occupied by one Williamson.   In 1879 the board of supervisors of the town altered this highway by duly and regularly laying it out on the line running east and west between the Olson 40 and the Williamson 40, so that it intersected with another highway running north and south on the west line of these two 40's.   Immediately thereafter the authorities opened and improved this piece of new road on the supposed line between the two 40's (the line which since 1871 had divided the land occupied by Olson from the land occupied by Williamson), and from 1879 to 1894 this highway existed four rods wide (two rods on each side of this line), and was traveled by the public until 1894.   In 1892 it was discovered that this line was not the true government line between the two 40's, but was at its east end 39 feet south of the true line, and at its west end 44 feet south of the true line.   Thereafter, in May, 1894, the town authorities entered upon the true line, and appropriated and graded a strip of land two rods wide on each side of the same as a highway, and the same has ever since been traveled and used by the public as such highway.   In the meantime the plaintiff had purchased and gone into possession of the Williamson 40; and from 1871 to 1892 he and his grantor had continuously occupied and held open and notorious adverse possession of the strip of land between this 40 and the highway as actually traveled on said supposed line.   Plaintiff brought this action to restrain the town from continuing the highway on said true line, and from appropriating any of the last-named strip.   On the trial the court found for defendant, and from the judgment entered thereon plaintiff appeals.

Conceding that plaintiff and his grantor, Williamson, held adversely, as against Olson, from 1871 to 1892, and, as against him, their 21 years of uninterrupted possession ripened into a title, it does not follow that the same is true as against the public or the defendant town.   The statute of limitations commenced to run

against the town, not in 1871, but in October, 1879, after the completion of the condemnation proceedings, and the 15 years which would bar the town had not run when it entered upon the true line and opened a highway thereon in May, 1894, but, as the court finds, lacked a few months of having so run. Then, unless the town was barred by something else besides the 15-year statute of limitations, the judgment should be affirmed.

2. Appellant contends that the public acquired a right to a highway on the supposed line by six years' user, under G. S. 1894, § 1832, and that by analogy the limitation against the public as to its right to open the road on the true line should also be six years. We cannot hold that any such principle of law is applicable to this case. If it were held that the public is barred in six years, the practical result in nine cases out of ten would be to make a six-years statute of limitations as between the adjoining private owners between whom the road runs.

3. Appellant further contends that by long acquiescence in the location of the road as it was first opened and traveled, the public has estopped itself from claiming that the road is elsewhere, and cites cases, most of which were between adjoining private owners, and in which it has been held that long acquiescence in a certain boundary is evidence of an implied agreement between the parties that it is the true boundary, and that such agreement and long acquiescence estop each of them from disputing the boundary thus established.

Conceding that this is the correct rule to apply between adjoining private owners, we cannot hold it should as readily be applied between the private owner and the public. As said in Parker v. City of St. Paul, 47 Minn. 317,[2] 50 N. W. 247: "The rights of the public are seldom guarded with the degree of care with which owners of private property guard their rights, and, consequently, acts or omissions which might weigh heavily against private persons cannot always be given the same force against the public." At the same time we are of the opinion that in a proper case the public may be estopped by acquiescence as well as the private owner. The distinction between them is merely one of degree, and each case must depend on its own circumstances. If, for instance, the

[2] At page 318.

public has permitted the abutting owner to occupy a part of the street for an unreasonable length of time, and make substantial improvements thereon, such as the erection of buildings, it might, and probably would, be a case where the doctrine of estoppel by acquiescence should be applied; but we cannot hold that it should be applied in the case at bar, where the improvements consisted merely of the erection of a farm fence and the cultivation of the land inclosed by it.

If the public is estopped by acquiescence in such a case as this, it must result in roads that were originally laid out of a uniform width on a straight line being now crooked, and of variable width. New York had a statute which provided that every public highway "that shall not have been opened and worked within six years from the time of its being so laid out * * * shall cease to be a road for any purpose whatever." 1 Rev. St. (1829), pt. 1, c. 16, art. 4, § 99. It was held in Walker v. Caywood, 31 N. Y. 51, that this statute applied only to cases where the road was not opened at all. Said the court:[3] "But the argument is not that the road has altogether lost its legal character by the omission to open it to its proper width, but that it has been curtailed in its proportions, and become of irregular and varying width; that its sides, which were defined by straight lines, have become crooked and wavering. I do not think this position is sound." It is true in the present case that, though the road as opened and traveled deviated from the true line, it was still a straight road of full and uniform width. But this cannot affect the principle involved. Whether the road should be opened on the true line was a question for the town authorities, not for the courts.

Judgment affirmed.

[3] At page 63.