WILLIAM REMY, Defendant in Error, *vs.* THE CITY OF
CHICAGO, Plaintiff in Error.

*Opinion filed June 24, 1915—Rehearing denied October 6, 1915.*

MUNICIPAL CORPORATIONS—*when doctrine of equitable estop-
pel will be applied.* While mere non-user or adverse possession,
alone, cannot divest the public's rights in a street, yet where there
are other circumstances indicating the complete abandonment of
the original street line by the public and the municipal authori-
ties, and persons acting in good faith have occupied the premises
under claim of ownership for many years with reference to a new
street line, and in reliance upon the acts of the municipal authori-
ties have made lasting and valuable improvements with reference
to the new line, the doctrine of equitable estoppel will be applied
and the public be held bound by its apparent complete abandon-
ment of its rights.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. JESSE A. BALDWIN, Judge, presiding.

JOHN W. BECKWITH, Corporation Counsel, (A. L.
GETTYS, of counsel,) for plaintiff in error.

CHARLES L. BARTLETT, and SHERMAN C. SPITZER, for
defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The controversy in this case concerns the existence of
a street over a strip of ground 5.28 feet wide and 196 feet
long at the southwest corner of Surf street and Sheridan
road, in the city of Chicago. The defendant in error,
William Remy, was the owner of lots 1 and 2 in the re-
subdivision of block 1 in LeMoyne's subdivision of the
south sixteen acres of the east half of the northwest quar-
ter of section 28, town 40, north, range 14, east of the
third principal meridian. Lot 1 lies north of lot 2 and ad-
joins Surf street on the south. The two lots have a front-
age of 98 feet on Sheridan road and extend west 196 feet

to a 16-foot alley. The defendant in error desiring to build upon the premises, had plans and specifications prepared for a three-story and basement brick apartment building to be erected upon the west 53.9 feet of the lots, which were submitted to the commissioner of buildings and the sanitary inspector of the city of Chicago, who approved them, and a permit for the construction of the building in accordance with such plans and specifications was issued. The plans and specifications included a porch 16 feet long and 10 feet wide, two stories high, with a balcony at the third story, to be substantially built of brick, stone, iron, steel and cement, extending across the 5.28-foot strip here in controversy to within one foot of its north line. Contracts were let and work was begun on the building, which continued for three weeks or more, when on November 29, 1909, the contractors were notified by the city to stop work until the matter of the south line of Surf street should be adjusted to the satisfaction of the street department. This was the first notice the defendant in error had of the claim that the 5.28-foot strip was a part of the street, and at that time the foundation and walls of the porch had been constructed four feet above the street grade. All the materials for the porch had been bought and a large part delivered. The city authorities demanded that the defendant in error tear down the foundation of the porch, and threatened themselves to tear it down and to revoke his permit. To prevent such action the defendant in error filed his bill and obtained a temporary injunction. On the hearing the court decreed that the defendant in error was the owner of the ground in controversy and perpetually enjoined the city from interfering with his private use of it. A reversal of the decree is sought by this writ of error.

The city claims that the strip of ground in controversy is a part of the street, and this claim is based upon an order of the commissioners of highways of the town of Lake View made on March 29, 1858, laying out a road

including the ground in question within its limits. The defendant in error denies the validity of that order, but contends that, even if it were valid, whatever rights the public might have acquired through it have been long since lost and extinguished, as to the ground in question, by non-user and abandonment and by acquiescence in the private possession and use of the defendant in error and his grantors. The road laid out by the highway commissioners had its south line 7.42 chains north of and parallel with the east and west center line of said section 28, which is the center line of Diversey boulevard. In 1869 the owner of a tract of sixteen acres between this road and Diversey boulevard, west of Sheridan road, had it surveyed and subdivided, and caused a plat of the subdivision, called LeMoyne's subdivision, to be recorded. The road, called Walsh street, appears on this plat immediately north of the subdivision, and the south line of the road is shown to be 495 feet north of and parallel with the center line of Diversey boulevard. It is therefore 5.28 feet north of the line fixed by the order of the commissioners of highways as the south line of the street.

We shall not inquire into the validity of the order of the commissioners of highways. The decree is based upon the ground of non-user and abandonment by the public and the adverse possession of the complainant and his grantors, with the acquiescence of the public, for more than thirty years. The evidence does not show when the road laid out by the commissioners of highways was opened, but a road has been used there for many years. The record does not, however, show any use by the public of the strip in question. There is now a cement sidewalk on the south side of the street within the limits of Surf street as indicated on the plat of LeMoyne's subdivision. It was built nearly thirty years ago and was preceded by a sidewalk made of two-inch plank, which was laid by the order of the trustees of the town of Lake View on the south side of Surf street

in 1868. Some evidence was given tending to show that this sidewalk was on the south line of the road as ordered laid out by the commissioners of highways, but it ran straight through from Evanston avenue to Sheridan road, and trees which stood on the ground in controversy and are still standing are evidence that the plank sidewalk could not have been laid over that strip. In 1872 the trustees of the town of Lake View adopted as the official map of the town a map made by Charles Rascher, on which Surf street appears in the same location as in the plat of LeMoyne's subdivision.

The order of the commissioners of highways establishing the road was never recorded in the recorder's office of Cook county. The only record of the proceedings is found in a book delivered to the city clerk of Chicago when the town of Lake View became a part of the city, in 1889. This book, which contains a record of the petition and of the order, has remained in the custody of the city clerk since that time. The city of Chicago maintains as a part of its public service a bureau called the map department, whose duty it is to make transcripts of all recorded plats in the recorder's office of Cook county within the limits of the city. In 1889 the city caused the plat of LeMoyne's subdivision as surveyed and recorded to be copied, and incorporated such plat and survey as a map of that subdivision in the map department of the city. When defendant in error purchased the property he obtained an abstract of the title and a title guaranty policy and had them examined by a lawyer. He had the premises surveyed. They were completely inclosed by a fence, which was about one foot south of the cement sidewalk on Surf street, and on the corner of Surf street and Sheridan road, upon the ground in question, was a one-story frame building. There was nothing to give the purchaser any notice of the existence of a highway over the strip of ground in question, and he had no notice of the claim of the city that such a

highway existed until after the contractors for his building were notified to stop work, as has been before stated.

In 1885 the trustees of the village of Lake View passed an ordinance for the improvement of Surf street by grading, curbing and macadamizing, which provided that the curbing on each side of the 30-foot roadway should turn at the intersection of each street and alley 18 feet from the curb forming the roadway, leaving a parkway on each side of Surf street 18 feet wide, including the sidewalk. The curbing in the alley west of the defendant in error's premises, and in the alley west of that, extends south from the roadway 18 feet, being 6 feet south of the sidewalk, and in the alley adjoining the defendant in error's premises on the west two rows of stone are set in the ground, constituting a crossing of the alley, and being where a sidewalk conforming to the survey made by the commissioners of highways in 1858 would have been. Such condition has continued since 1886, and it is insisted is evidence that the part of the street in question had not been abandoned and was visible notice to the defendant in error of the claim on behalf of the public. The curbing and crossing stones were in the public alley, and their being there was not inconsistent with the private ownership of the ground up to the sidewalk. As evidence of the city's claim they must be considered in connection with the facts that the town of Lake View, and later the city, had adopted the plat of LeMoyne's subdivision; that the public authorities had built the walk according to that plat; that they have not used, occupied, improved or appropriated any of the strip in question south of the sidewalk as a part of the street, but have permitted its occupation by the defendant in error and his grantors for their private use, and have also permitted the inclosing and occupation of the same strip by other property owners along the south side of Surf street by planting and growing trees, and by constructing and maintaining walks, copings, buildings, porches, steps and approaches

upon said strip, and that the city, by its officers, authorized the construction by the defendant in error of his building upon the premises in question according to the plans and specifications submitted to them, and permitted such construction to proceed until he could not change his plans or location without great loss.

The Statute of Limitations does not apply to a city in respect to the possession of its streets and alleys. They are held for the benefit of the public, and mere non-user or adverse possession, alone, cannot divest the public's rights in them. Where, however, there are other circumstances indicating a complete abandonment by the public and the municipal authorities, and persons acting in good faith have occupied the premises under a claim of ownership for many years and in reliance upon the acts of the city have made valuable and lasting improvements which it would be inequitable to destroy, the doctrine of equitable estoppel will be applied and the public held bound by the apparent complete abandonment of its rights. (*Jordan* v. *City of Chenoa,* 166 Ill. 530; *City of Carlinville* v. *Castle,* 177 id. 105; *People* v. *City of Rock Island,* 215 id. 488.) In this case for thirty years the rights now claimed for the public have not been exercised, but the place in controversy has been held adversely to such rights with the acquiescence of the public, and neither the public authorities nor any individual has protested against or sought to prevent such adverse holding. On the contrary, the public authorities gave express permission for the construction of the building in the place where it was erected, and it would be inequitable, after the expenditure, in good faith, of a large amount of money in reliance upon the action of. the public authorities and upon the non-user and apparent abandonment of the public rights, to permit the city to take possession of the premises as a street.

The decree of the circuit court is affirmed.

*Decree affirmed.*