## CITY OF ROCHESTER v. NORTH SIDE CORPORATION AND OTHERS.[1]

November 28, 1941.

No. 32,920.

*Irving L. Eckholdt* and *Desmond B. Hunt,* for appellant.

*Christensen & Ronken,* for respondents North Side Corporation and Kenneth and Esther B. Silker.

*J. L. Plemling,* for respondent Sinclair Refining Company.

JULIUS J. OLSON, JUSTICE.

In a suit to enjoin and restrain defendants from maintaining certain buildings and structures "in or on" Broadway street north, in Rochester, and that defendants "be required forthwith to remove said buildings, structures and obstructions" therefrom, plain-

[1]Reported in 1 N. W. (2d) 361.

tiff met with adverse findings. It appeals from an order denying its blended motion for amended findings or a new trial.

The record is singularly free from conflict as to the facts, which may be thus summarized: In 1857 the area here involved was platted. As thereby located and dedicated, Broadway, 66 feet in width, runs in a general northerly and southerly direction along the easterly boundary of outlots 12 and 13. Until the commencement of the present suit, the city had done nothing to open to public travel the portion of the street here involved. Its dedicated purpose has remained on paper only. In fact Broadway, as laid out, constructed, and used on the ground, although 66 feet in width, is on a line deviating from the platted location "by a curve, running first east and then back again toward the west," where it again enters the platted location some distance to the north of the mentioned lots. There and there only it has been "worked and improved and maintained" as a public street "for more than 75 years" by the city, and during all these years has "been one of the principal arteries of commerce and travel between plaintiff city and the territory to the north." Not only was the street thus physically opened and maintained, but it has been used in the laying of water mains and sewers. It connects with a steel and concrete bridge across the Zumbro river substantially at the same point theretofore occupied by two wooden bridges and a later and more substantial steel bridge. The buildings sought to be removed are located, in part at least, upon the platted street fronting lot 13. At least one of the buildings has been "in its present location for more than 40 years." Defendants and their predecessors in title and interest, in reliance upon the accuracy of the physical location of the street, have in good faith erected, upon what they thought were their premises, buildings and other structures, consisting among others of a dwelling house and a gasoline filling station with the usual equipment of pumps, underground tanks, etc. These are structures "of a substantial and permanent nature and of the value of many thousand dollars, and said buildings and structures have been maintained by defendants since their

erection and until the commencement of this action, without any protest or warning from plaintiff that plaintiff claimed the premises as a public street." In addition, a very substantial portion of these structures was erected in conformity with building permits granted by the city for their construction.

Under the circumstances related, the court was of the view that the city, by its inaction as to the platted street and its obvious intent to relocate it on the ground, is not now in position to maintain this action. It concluded that the city's long-continued conduct amounted to an abandonment of the dedicated street insofar as defendants' rights are involved. Accordingly, plaintiff's cause was dismissed on its merits and judgment directed in accordance therewith.

Only one question is properly here, i. e., do the facts found by the court justify its conclusions of law? And that, too, is plaintiff's view, for in its brief it is said: "It is the contention of the plaintiff * * * that the conclusions of law are not warranted by the evidence," i. e., the facts found. In support of that position it cites and relies principally upon Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247; Bice v. Town of Walcott, 64 Minn. 459, 67 N. W. 360, and other cases of similar import; also 4 Dunnell, Dig. §§ 6620 and 6620a, and cases cited under notes.

That courts generally, and our own in particular, have jealously guarded public rights in, to, or upon public streets and other public rights dedicated to public use as against encroachments by private interests is obvious from a study of the decided cases, here and elsewhere. Obviously this was, and still is, proper and needful. While there are a few cases holding, as plaintiff contends, that "a municipality cannot by its acts or conduct be estopped to open or use a street," 25 Am. Jur., Highways, § 114, and cases under note 18, these, however, are contrary to the weight of authority. Id. and cases under note 19. The prevailing rule is that—

"an estoppel arises where there is long-continued nonuser by the municipality, together with the possession by private parties in good faith and in the belief that its use as a street has been abandoned, and the erection of valuable improvements thereon without objection from the municipality, which has knowledge thereof, so that to reclaim the land would result in great damage to those in possession." *Id.* and cases under note 20; 21 C. J. pp. 1197, 1198, 1199 [§ 197] (h), and particularly the cases cited under note 69. *Cf.* 2 Pomeroy, Equity Jurisprudence (4 ed.) §§ 818 and 821.

In Remy v. City of Chicago, 268 Ill. 597, 602, 109 N. E. 679, 681, we have a factual setup practically paralleling the situation here. There the court had for consideration the city's rights under dedication to its predecessor as against a person who claimed adversely. The court held that the statute of limitations did not apply to a city in respect to the possession of its streets and alleys, since these are held "for the benefit of the public, and mere nonuser or adverse possession, alone, cannot divest the public's rights in them." But, continued the court:

"Where, however, there are other circumstances indicating a complete abandonment by the public and the municipal authorities, and persons acting in good faith have occupied the premises under a claim of ownership for many years and in reliance upon the acts of the city have made valuable and lasting improvements which it would be inequitable to destroy, the doctrine of equitable estoppel will be applied and the public held bound by the apparent complete abandonment of its rights." (Citing cases.)

There, as here, the adverse rights claimed by the individual had been exercised and held adversely to the rights of the city without protest by anyone representing the public. Said the court:

"On the contrary, the public authorities gave express permission for the construction of the building in the place where it was erected, and it would be inequitable, after the expenditure, in good faith, of a large amount of money in reliance upon the action of

the public authorities and upon the non-user and apparent abandonment of the public rights, to permit the city to take possession of the premises as a street."

Other cases sustaining that view are found in 21 C. J. p. 1197, under note 69.

It will be noted, too, that in our own case of Bice v. Town of Walcott, 64 Minn. 459, 461-462, 67 N. W. 360, 361, this court said, by the way of dictum, however, that—

"we are of the opinion that in a proper case the public may be estopped by acquiescence as well as the private owner. The distinction between them is merely one of degree, and each case must depend on its own circumstances. If, for instance, the public has permitted the abutting owner to occupy a part of the street for an unreasonable length of time, and make substantial improvements thereon, such as the erection of buildings, it might, and probably would, be a case where the doctrine of estoppel by acquiescence should be applied; but we cannot hold that it should be applied in the case at bar, where the improvements consisted merely of the erection of a farm fence and the cultivation of the land inclosed by it."

Without doubt, the dedication of a public street is intended by the donor to be put to the dedicated use; otherwise there would be no useful purpose in the dedication.

Over a period of more than 83 years, even prior to our statehood, the officers of the city have permitted the involved area to lie unused. To sustain the city's contention now, we are asked to ignore its peaceful slumber of more than three-quarters of a century and thereby to penalize defendants' work and their very substantial investments, all made in good faith. In a very important way they have contributed to the city's growth and incidentally to its treasury as owners and taxpayers of the property now sought to be taken. If estoppel is not applicable to a state of facts such as we have here, then surely that equitable principle is not of much value to property owners. As between individuals,

there can be no question about its applicability. We therefore unhesitatingly conclude that where, as here, actual use has been publicly exercised by a physical laying out and the continual improvement and use of a street as thus laid upon adjoining property, there can be no question about the propriety and legality of the conclusion reached by the court. 25 Am. Jur., Highways, § 115, and cases under notes 10 and 11. Its order therefore is in all things affirmed.

Affirmed.