STATE, BY J. A. A. BURNQUIST, ATTORNEY GENERAL, v. WILLIAM (ALSO KNOWN AS WM.) MARCKS.[1]

March 18, 1949.

No. 34,866.

[1]Reported in 36 N. W. (2d) 594.

130

*J. A. A. Burnquist,* Attorney General, *Arthur Christofferson,* Deputy Attorney General, and *Joseph J. Bright,* Special Assistant Attorney General, for the State.

*Finstad & Ruenitz,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by the attorney general, acting for the commissioner of highways, in behalf of the state, to compel defendant, William Marcks, to remove a building constructed by him in 1941 within the boundaries of First avenue as platted in 1880 in the Second Addition to the city of Windom. The property here involved, constituting a part of First avenue as originally platted, was made a part of state trunk highway No. 85 on January 30, 1947, by center line and width orders of the commissioner of highways.

No condemnation proceedings were then instituted with reference to defendant's structure, it being the state's contention that the structure was a purpresture and ordinary nuisance, erected by defendant without right on property then belonging to the city and subsequently acquired by the state as successor as part of the state highway system.

Defendant denied the state's claim and asserted that he was the legal and equitable owner of the real estate upon which the structure was constructed; that he had purchased the same from the city of Windom in 1941; that it had been conveyed to him by the city by quitclaim deed in October 1941; that the property had never been used as a street; that it had been abandoned as such long prior to his purchase thereof; that by virtue of such abandonment title thereto had reverted to the Drake estate as successor of the original dedicators pursuant to a reversionary clause in the dedication plat; that, in addition to the quitclaim deed from the city, defendant had received from the Drake estate a quitclaim deed to said premises in February 1947; that at the time it sought to acquire said premises for highway purposes under commissioner's orders of January 30, 1947, the state acquired no rights therein by succession, the city having previously abandoned use thereof for highway purposes.

Defendant, in the retail and wholesale seed business since 1925, came to Windom in 1941 to look for a seed house location. On September 29, 1941, he asked the city to sell him the property here involved, upon which he contemplated building a warehouse. The

property, which unknown to defendant had been dedicated as a part of First avenue in the Second Addition to Windom, was then being used as a potato patch. It had never been used as a street. A price of $250 was agreed upon and paid by defendant to the city on that date.

On October 7, 1941, a quitclaim deed reciting the $250 consideration was delivered to defendant covering the premises. On October 10, 1941, he commenced construction of a building thereon and subsequently completed it at a cost of $5,000. Since its completion, it has been occupied by defendant as a warehouse. It is connected with city water, sewer, and electricity. Defendant has paid the city for such services. He has also paid real estate taxes thereon since the year 1942, when it was placed upon the tax rolls.

A clause in the original plat of the Second Addition to Windom provided:

"* * * in case of the vacation of any of said streets by any competent authority the reversionary title of said vacated streets is expressly reserved and declared to be in the original platting company, the Sioux City and St. Paul Railroad Company, and the title in fee of such vacated streets is expressly reserved and declared to be in said company and the fee and any part of any street is declared not to be included in or as any part of any lot therein."

It is undisputed that the Drake heirs succeeded in interest to the Sioux City and St. Paul Railroad Company. It is further undisputed that in the event the city abandoned said street as platted title thereto would revert to the Drake estate, even though no formal proceedings for the vacation thereof were taken by the city council.

On February 13, 1947, the Drake heirs conveyed all their right, title, and interest in and to the premises to defendant by quitclaim deed. The $25 consideration for such deed was paid by the city of Windom.

Subsequent to the dedication of the Second Addition to Windom in 1880, another addition to the city known as Hutton & Collins' Addition was dedicated. A "First Avenue" was shown in such dedi-

cation. It did not constitute an extension of First avenue as originally dedicated in the Second Addition to Windom, but appeared as an extension of another street known as Bingham Lake road, which had always been used as a substitute for the original First avenue for some distance east of the premises here involved. The city subsequently caused street markers to be placed on Bingham Lake road and on First avenue as covered in Hutton & Collins' plat, designating *such streets* as "First Avenue" in lieu of that part of the original First avenue upon which the premises here involved are located.

The trial court denied the relief sought by the state and made findings, conclusions, and an order for judgment in favor of defendant. The trial court determined therein:

"That said First Avenue, as platted, between 13th Street and 14th Street has never been used at any time as a traveled street or highway by the City of Windom * * *. That said city has from time to time used a portion of said First Avenue, as platted, between 13th Street and 14th Street [where defendant's property is located] as a dump for a gravel pile; as a proposed site for a well, partially drilled but never used; and as a location for certain power and light poles. * * * that all public travel on said First Avenue between 13th Street and 14th Street has at all times used said old Bingham Lake road to the exclusion of any travel on said First Avenue, as platted, between 13th Street and 14th Street."

On appeal, the state asserts that the evidence does not sustain a finding of abandonment, and that, in the absence thereof, said premises, having been dedicated for highway purposes under well-settled authorities, could not be conveyed by the city to defendant, who therefore held no title thereto at the time it became a part of the state highway.

■ It is settled that under ordinary circumstances a municipality has no power to convey to another property dedicated and in use for highway purposes. It holds the qualified or terminable fee title thereto in trust for the people, and it can neither sell such title nor

devote it to a private use. See, City of St. Paul v. C. M. & St. P. Ry. Co. 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184; Kendrick v. City of St. Paul, 213 Minn. 283, 6 N. W. (2d) 449. This being true, unless the evidence here is sufficient to sustain the trial court's finding that First avenue in Windom had been abandoned for highway purposes before the commissioner's orders of January 30, 1947, it is clear that the quitclaim deed from the city to defendant on October 7, 1941, was of no force and effect.

■ It is further settled, however, that a public highway may be abandoned by a municipality for highway purposes, and that, if the evidence discloses such an abandonment, the city is thereafter estopped from asserting rights under the original dedication against persons or parties relying upon evidence of such abandonment who would suffer loss if the city again asserted rights thereto for highway purposes. As stated in City of Rochester v. North Side Corp. 211 Minn. 276, 277, 1 N. W. (2d) 361, 362:

"* * * Broadway, as laid out, constructed, and used on the ground, although 66 feet in width, is on a line deviating from the *platted location* 'by a curve running first east and then back again toward the west,' where it again enters the platted location some distance to the north of the mentioned lots. There and there only it has been 'worked and improved and maintained' as a public street * * *. The buildings sought to be removed are located, in part at least, upon the platted street * * *. Defendants and their predecessors in title and interest, in reliance upon the accuracy of the physical location of the street, have in good faith erected, upon what they thought were their premises, buildings and other structures, consisting among others of a dwelling house and a gasoline filling station with the usual equipment of pumps, underground tanks, etc." (Italics supplied.)

This court then gave approval to the following rule expressed in Remy v. City of Chicago, 268 Ill. 597, 602, 109 N. E. 679, 681:

"* * * Where, however, there are other circumstances indicating a complete abandonment by the public and the municipal authori-

ties, and persons acting in good faith have occupied the premises under a claim of ownership for many years and in reliance upon the acts of the city have made valuable and lasting improvements * * *, the doctrine of equitable estoppel will be applied and the public held bound by the apparent complete abandonment of its rights."

■ The City of Rochester case relates to the rights of abutting owners. This, the state asserts, constitutes a distinction which indicates that the principles set forth therein would have no application to the facts here. In the instant case defendant is not an abutting owner. However, under the reversionary clause in the original plat, in the event of abandonment, the property goes not to abutting owners, but rather to the Drake estate. In substance, the Drake estate is in the same position as would have been the abutting owners had the clause been absent. Defendant, as assignee of the Drake estate, may fairly be said to stand in the place of the abutting owners.

■ If the evidence sustains the trial court's finding of abandonment prior to January 30, 1947, it must follow that on that date the city had no further interest in the property, and, in consequence, that the state's title as of that date was ineffective. Likewise, not having made compensation to the Drake estate or to defendant as its assignee in condemnation proceedings, the state can claim no right, title, or interest in the premises from this source. The record discloses substantial evidence to sustain the trial court's finding on this issue.

The tract has been used at all times for purposes entirely in conflict with highway usage. It is true that when a street is dedicated by plat the city may choose its own time to occupy and open the same, and, until it does so, the possession by abutting owners is not regarded as hostile. See, Pierro v. City of Minneapolis, 139 Minn. 394, 166 N. W. 766; Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588. Here, however, there is much more positive evidence of abandonment than mere nonuser. Many affirmative

unequivocal acts of the city indicate an intent to abandon this property for highway purposes. At one time the city had used such premises as a place for storage of gravel and other materials. A few years prior thereto, it had sunk a test well in the center of the platted street and, no doubt, would have maintained the same had water been found therein. It had placed telephone poles thereon in such a way as to block the free use thereof as a highway. After the erection of defendant's structure, it had placed the property on its tax rolls and furnished defendant with light and water from its plants. Sewer connections thereto were then completed. It designated substitute highways, including the Bingham Lake road and its extension into First avenue in Hutton & Collins' Addition, as "First Avenue" by suitable markers.

All such facts reasonably sustain the trial court's finding that the city had abandoned the use of the property for highway purposes long prior to the date the state attempted to take it over as a part of its highway system. In consequence, at that time the state succeeded to no rights of the city therein.

■ It is contended by the state that under our decisions the city cannot be estopped from asserting its right to the premises for highway purposes, and that the state, as successor to the city, stands in a like position. It is true that the doctrine of estoppel is not applied as freely to municipal corporations as to private individuals. See, The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. (2d) 710. The cited cases, however, do not relate to instances where highway property has been abandoned by a municipality by positive and affirmative acts. The decisions cited merely involve the right of a city to rescind orders or permits issued by it under a mistake of fact or contrary to law, notwithstanding a third party's reliance thereon. They do not relate to instances where legal rights of a municipality have terminated by abandonment and property has reverted to abutting owners or reversionary interests. When such facts appear, there is no reason why a city may not be estopped to assert rights thus abandoned after third

persons, in reliance thereon, have changed their position to their detriment.

Affirmed.

[1]Reported in 36 N. W. (2d) 544.