91 So.2d 289 (1956)
SERVANDO BUILDING COMPANY, a Florida corporation, Appellant,
v.
Arthur C. ZIMMERMAN; Dana H. Gillingham and Mary E. Gillingham, his wife; Margaret D. Meyer and Harry H. Meyer, her husband; and Alexander O. Feidelson and Elizabeth K. Feidelson, his wife, Appellees.
Supreme Court of Florida. En Banc.
December 19, 1956.
James T. McBrayer, Miami, for appellant.
George C. Simpson and Worley, Gautier & Dawes, Miami, for Arthur C. Zimmerman et al.
Turner & Turner, for A.O. Feidelson and Elizabeth K. Feidelson, his wife, appellees.
THOMAS, Justice.
This suit was one to quiet title of the appellees to streets and an alley in a subdivision by extinguishing any claims of the defendants. The plaintiffs were awarded a decree and are, therefore, appellees here while one defendant is appellant. All the appellees owned lots that were conveyed to them according to a certain plat, which will presently be described, and all deraigned their title as required by Sec. 66.20, Florida Statutes 1953, and F.S.A. The first link in each chain was a deed from Francis D. Wheeler and Elizabeth Marie Wheeler, his wife.
It appears from the record that the plat to which there was reference in each of the deeds was recorded in the year 1926 by Coral Gables Corporation, the then owner of the land in which appellees' lots are located.
The plat bore a marginal notice that a dedication was recorded, or would be recorded. The following are the pertinent provisions of this dedication:

*290 "Now, Therefore, These Presents Witness, That the said Coral Gables Corporation, for itself, its successors and assigns, does hereby dedicate all streets, avenues, and other thorough-fares, shown on said plat, to the free use of the public as highways, and also all plazas shown thereon to the free use of the public as such; provided that if such use of any part thereof shall or may be discontinued by law such part shall revert to said Coral Gables Corporation, its successors and assigns.
"And these presents further witness that it is not the intention of this instrument to dedicate in any manner any of the alleys shown on said plat, whether indicated by the word `alley' or otherwise, or to dedicate any of the parks shown thereon, whether indicated by the word `park' or otherwise; but the private and unconditional ownership of each and all of said alleys and each and all of said parks is hereby expressly reserved in said Coral Gables Corporation, its successors and assigns, for private use and disposition." (Emphasis supplied.)
It is noteworthy that the provisions affecting streets and alleys are not the same.
At the time the plat was recorded there was an outstanding mortgage to Francis D. Wheeler from Anna R. Chichester. Evidently Coral Gables Corporation purchased the whole tract subject to this mortgage and proceeded to have the plat and dedication recorded. Subsequently, in 1930, the mortgagee, Francis D. Wheeler, foreclosed the mortgage against the mortgagor and Coral Gables Corporation. In the decree it was provided that the property be sold "subject to the dedication of * * * streets, avenues and thorough-fares crossing said property" as shown on the plat and following this provision appeared the language: "However, the reversionary interest in said sidewalks, streets, avenues and throughfares shall pass by the Master's deed to the abutting property owners." So the title to the lots involved in this case became vested in Francis D. Wheeler by master's deed. After that the Wheelers conveyed to the appellees and others by reference to the plat that had been filed by Coral Gables Corporation.
About twenty-four years after the decree of foreclosure was entered, the city commission of the City of Coral Gables ordained that Veronese Street between Avenue Gondoliere and Sunset Road, as it was defined on the plat, be vacated and discontinued. The lot of one appellee abuts Sunset Place and an alley; the properties of two appellees abut Veronese Street; and the property of one appellee abuts Sunset Place.
After the ordinance was enacted Elizabeth Marie Wheeler conveyed to the appellant by warranty deed "Veronese Street" and "Sunset Place" between certain points and including the parts of these streets lying in front of appellees' properties, and the alley which borders the lot of one appellee.
The following is a tracing of so much of the plat as is necessary clearly to illustrate the relative location of appellees' properties and the streets and alley adjacent to them:

*291 For emphasis, we repeat that the ordinance affected only Veronese Street and contained no reference to Sunset Place; also both streets were conveyed as parcels of land, although the reversion mentioned in the dedication was apparently intended to take effect only upon "discontinuance by law," and we are aware of no law discontinuing the use of Sunset Place.
In the decree in the instant suit the chancellor quoted the portion of the decree in the earlier foreclosure to which we have referred and from which we have quoted.
He cancelled and annulled so much of the deed from Elizabeth Marie Wheeler to the appellant as was intended to effect a transfer of the streets and alleys abutting appellees' lots and confirmed the title to the streets and alleys in the respective appellees.
We think the several questions posed for our determination may be reduced to one, namely, in the circumstances we have related, did the deeds to plaintiffs, from the Wheelers containing the references only to the plat, convey the title to the center of the street subject to the easement, or was the title retained by the grantors so that the streets might be sold as individual parcels?
At once the impractical effect of a ruling favorable to appellant is obvious. The seven corner lots purchased as such would become inside lots which they were never intended to be. And the impracticality will be emphasized as we will show before we conclude our comment.
It is argued that every purchaser was put upon notice by the reference on the plat to the dedication, and by the dedication itself, that upon discontinuance of any street "such part" would revert to the dedicator, its successors and assigns, and that it follows, therefore, that when it was ordained that Veronese Street be vacated, the fee to property in the street free of user was alienable by Wheeler as successor to Coral Gables Corporation. At a glance this contention seems logical but when the underlying principle is taken into account and the interpretation of the dedication is based on that principle, with the aid of the circumstances surrounding this controversy, the contention of the appellant must be rejected.
The guide in such situations, primarily, is the intention of the party making the dedication. In Smith v. Horn, 70 Fla. 484, 70 So. 435, 436, it was written that "the title of the grantees of [lots] abutting on such streets, in the absence of a contrary showing, extends to the center of such highway, subject to the public easement." In Florida Southern Ry. Co. v. Brown, 23 Fla. 104, 1 So. 512, 513, decided nearly seventy years ago, this court observed that the rule "seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve his interest in the street when he had parted with his title to adjoining land." And it was further said in that case that such intention will never be presumed.
In Smith v. Horn, supra, it was further commented that the "rule is one for construing conveyances, and must be applied to carry out, and not to frustrate the intention of the parties. Where no contrary intent appears, a conveyance to a street carries title to the center of the street, subject to the public easement, the title to the land under the street passing by construction, and not as appurtenant to the abutting land." (Emphasis supplied.)
We take it then that we are bound to determine the intention of the parties and to decide whether or not the phraseology in the dedication, without any presumption being indulged on behalf of the appellant, was such that the closure of Veronese Street operated to put the title of the street, free of the easement, in appellant's grantor, Elizabeth Marie Wheeler, whose husband had bought from the master.
There was a provision in the foreclosure decree, as we have related, that the reversionary *292 interest in streets, and so on, should pass by the master's deed to abutting owners. This indicated a purpose on the part of the chancellor not to separate the fee of the streets and the fee of the lots. The decree described the encumbered property both as acreage, as it was described in the mortgage, and by lots and blocks as it appeared on the plat that was recorded after the mortgage was given.
It may be that the reference in the decree was beyond the issues of the case, a thought that suggests itself as we explore the file, but there is no need to pause for discussion of that matter. The fact remains that the pronouncement by the court was made a quarter century ago and in the intervening years conveyances have been made by the mortgagee, who purchased at the foreclosure sale and whose title originated with the master's deed executed pursuant to that decree. This is not determinative of this case but is a circumstance bearing on intention.
Another circumstance we have already mentioned, that is, the curious result of changing corner lots into inside lots. When we consider what the outcome of adopting appellant's view could be, we veer even farther from the view that there was an intention that the fee of the land dedicated as streets should be alienable by appellant as successor of Elizabeth Marie Wheeler, as distinguished from the owner of the abutting property.
When the mortgage from Anna R. Chichester to Francis D. Wheeler was given, the property was described as acreage but it was contemplated by the parties that it might be subdivided for there was an express provision that that could be done. In the event the property was subdivided into lots and blocks, releases from the lien of the mortgage were to be executed at the rate of $800 for each lot of not more than one-fifth of an acre and the amount paid was to be credited on the mortgage.
This showed plainly a willingness on the part of the mortgagee to change the status of the security from one as a whole tract to one of lots and to reduce the mortgage proportionately as the 800-dollar payments were made. Cf. Weills v. City of Vero Beach, 96 Fla. 818, 119 So. 330. It seems logical to conclude that if all lots were released at that rate, no indebtedness would remain, even taking into account the area devoted to streets and alleys.
The property had an area of thirty-nine acres, more or less, so there were about 195 lots which if released at $800 a lot or $4,000 an acre would have brought $156,000. The principal debt was $124,800. So there was a wide margin between the amount of the debt and the amount the mortgagee would have received had all lots been sold and been released on the terms mentioned in the mortgage.
This mortgage was on record when Coral Gables Corporation took title to the property presumably from Anna R. Chichester and proceeded to subdivide it.
Upon subdividing the property and marketing it, Coral Gables Corporation sold according to the plat and obviously that subdivider could not have interested buyers of lots unless there was access to a street. We doubt if a prospective purchaser would have even considered investing in any of the corner lots if he had suspected that eventually a corner lot might become an inside one, or in an inside one that could possibly become a piece of land with no outlet on a street.
Taking into account the history of this property for the past thirty years, we cannot conclude that it was the intention of any of the parties dealing with it to have the fee of streets retained in the Coral Gables Corporation, one-time holder of the legal title, which corporation got its title from Chichester, mortgagor, or in Francis D. Wheeler, mortgagee in a mortgage in which first it was indicated that the property might be subdivided and its character, therefore, changed from acreage to lots and *293 blocks thereby making streets a factor indispensable to a successful marketing.
From our close study we take the view that the dedicatory language in the light of this history will not permit a construction that there was an intention to deviate from the general rule that one purchasing a lot according to a plat gets title to the center of the street subject to the easement. If the Wheelers had a contrary intent they should have clearly expressed it when making conveyances by reference to the plat subsequent to foreclosure. To repeat, we are dealing with the basic question of construing the intention of the parties to the transaction we have detailed, and in consideration of the plat we have applied the rule that the plat should be construed against the developer who created it and chose the words with reference to it. McCorquodale v. Keyton, Fla., 63 So.2d 906.
What we have said about the history of the transactions affecting the property involved in this litigation applies to the alleys as well as the streets. But we have not overlooked the difference between the language of the dedication with reference to streets, and that regarding alleys. In the case of the latter the dedicator stated that there was no intention to dedicate any of the alleys shown on the plat and that they were expressly reserved for private use and disposition.
It is difficult to understand why such a condition should have been imposed but we can ascribe to it little efficacy because of the provisions of the law enacted before the plat in question was recorded. In Sec. 8 of Chapter 10275, Laws of Florida, Acts of 1925, now Sec. 177.08, Florida Statutes 1955, and F.S.A., prescribing the method of preparing plats, it was provided that "no strip or parcel of land shall be reserved by the owner when recording a subdivision, unless the same is sufficient in size and area to be of some practical use or service." This must have meant a use or service that would be practical from the standpoint of the dedicator, or the one who reserved it. What practical use or service the alleys on the plat in question could be to the appellant as distinguished from appellees and other owners we cannot understand. The alley here involved was ten feet in width. An isolated piece of land of such proportion could be of no use to anyone except owners of property it touched and persons dealing with them.
It is true that the dedicatory language employed in regard to alleys applies also to parks, while plazas are mentioned in the paragraph of the dedication with reference to streets. What distinction there could be between parks and plazas that would justify classifying them differently is so puzzling as to give us the idea that the language in the dedication was, to say the least, carelessly chosen, and fails to express the "clear intent" necessary to avoid application of the "rule." Florida Southern Ry. Co. v. Brown, supra.
We decide that the appellees properly prevailed so the decree is 
Affirmed.
DREW, C.J., and TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.
ROBERTS, J., dissents.
ROBERTS, Justice (dissenting).
Plaintiffs, appellees here, own lots abutting on Veronese Street and on Sunset Place in the Biscayne Bay Section of the City of Coral Gables, one of which (Veronese) has been officially "vacated and discontinued" by the city. All plaintiffs deraign their title (although not immediately in every case) from Francis D. Wheeler and Elizabeth Marie Wheeler, his wife. They filed the instant suit to have declared null and void, as a cloud on their title, a deed from Mrs. Wheeler, as widow and sole devisee under the will of Francis D. Wheeler, *294 to the Servando Building Co., defendant-appellant, by which Mrs. Wheeler conveyed to Servando certain streets and alleys in the above mentioned subdivision, including the portions of Veronese Street and Sunset Place upon which plaintiffs' lots abut. Upon a consideration of the complaint, Servando's answer thereto, and various exhibits filed by the parties, the Chancellor entered a final decree cancelling the deed from Mrs. Wheeler to Servando "insofar as said deed conveys the streets and alleys abutting the [plaintiffs'] property" and also enjoining Servando and Mrs. Wheeler from claiming title to any reversionary interest in such portions of the streets and alleys. Servando has appealed.
The facts as shown by the pleadings and exhibits are as follows: Francis Wheeler held a mortgage on a parcel of land which was subsequently subdivided and platted as the Biscayne Bay Section, Part One, of Coral Gables. Wheeler's mortgage expressly provided that the acreage could be subdivided into blocks and lots and the lots sold free of the mortgage lien under stated circumstances. The plat of the subdivision was filed for record on July 13, 1926, and contained a notation that "This plat is made subject to a dedication thereof, recorded, or to be recorded among the Public Records of Dade County." The dedicatory instrument, filed for record the same day, dedicated "all streets, avenues, and other thoroughfares" shown on the plat to the public use and provided that "if such use of any part thereof shall or may be discontinued by law such part shall revert to said Coral Gables Corporation, its successors and assigns." It was expressly provided therein, however, that the alleys and parks shown on the plat were not dedicated to public use and that the "private and unconditional ownership" of such alleys and parks was reserved in the dedicator, its successors and assigns, for private use and disposition.
Francis Wheeler foreclosed his mortgage in 1930 and bought in the property (except for certain lots that had apparently been sold, as authorized by the mortgage) at the foreclosure sale. The final decree of foreclosure authorized the Master to sell the property as a whole or by separate lots or parcels, and contained the following provision:
"It Is Further Ordered and Decreed that the above described property shall be sold subject to the dedication of the sidewalks, streets, avenues and thorough-fares crossing said property as shown on the plat above mentioned of Coral Gables Biscayne Bay Section, Part One, Plat "A" as recorded among the public records of Dade County, Florida in Plat Book 25, page 63. However, the reversionary interest in said sidewalks, streets, avenues and thorough fares shall pass by the Master's deed to the abutting property owners." (Emphasis added.)
The deeds by which Francis Wheeler and his wife conveyed to plaintiffs or their predecessors in title their respective lots described the property by reference to the recorded plat but did not expressly reserve to the grantors any reversionary interest in the streets, avenues, and thoroughfares shown on the plat and dedicated to public use.
The point for determination here is whether in these circumstances the conveyances to plaintiffs of lots abutting the streets carried with them the title to the center of the street, subject only to the public easement.
This court holds that a dedication of a street to public use does not divest the dedicator of his title to the land; it merely subjects the land and the title to a public easement for street purposes. Robbins v. White, 52 Fla. 613, 42 So. 841. It is also settled law that where conveyances of lots abutting upon streets are made with reference to a map or plat dedicating such streets to public use, "the title of the grantees of subdivisions [sic] abutting on such streets, in the absence of a contrary showing, *295 extends to the center of such highway, subject to the public easement." Smith v. Horn, 70 Fla. 484, 70 So. 435, 436. In the early case of Florida Southern Ry. Co. v. Brown, 1887, 23 Fla. 104, 1 So. 512, 513, it was said that this rule "seems to be based on the supposed intention of the parties, and the improbability of the grantor desiring or intending to reserve his interest in the street when he had parted with his title to adjoining land. Such intention will never be presumed." And the court in Smith v. Horn, supra, again pointed out that "This rule is one for construing conveyances, and must be applied to carry out, and not to frustrate the intention of the parties. Where no contrary intent appears, a conveyance to a street carries title to the center of the street, subject to the public easement, the title to the land under the street passing by construction, and not as appurtenant to the abutting land." (Emphasis added.)
It is also well settled that, where a deed describes property by reference to a map or plat, the map or plat referred to "becomes as much a part of the instrument making the reference as if actually copied into it." Andreu v. Watkins, 26 Fla. 390, 7 So. 876, 880. And since the plat here involved was expressly made subject to the dedicatory instrument filed for record on the same date, it follows that the terms of such dedication were also a part of the deeds by which plaintiffs took title to their respective lots.
Nor can there be any doubt that Francis Wheeler, as the purchaser of the property at the mortgage foreclosure sale, acquired the title of and succeeded to the reversionary rights, if any, of the Coral Gables Corporation. Cf. Jones v. Hiller, 65 Fla. 532, 62 So. 583. Ordinarily, the purchaser of property at a mortgage foreclosure sale acquires the title of the mortgagor as of the date of the mortgage, Logan v. Stieff, 36 Fla. 473, 18 So. 762. But, as has been noted, Wheeler's mortgage expressly authorized the subdividing and platting of the acreage covered by his mortgage; and the Chancellor in the mortgage foreclosure suit properly held that the purchasers at the foreclosure sale should be bound by the street dedications made in the plat and, at the same time, confirmed in such purchasers the title to the reversionary interest in the streets and thoroughfares expressly reserved by the dedicator in the dedicatory instrument. The writer so interprets the provision of the decree in that suit, quoted and italicized earlier in this opinion, and rejects the contention made by the plaintiffs, Mr. and Mrs. Feidelson, that the Chancellor by such provision intended thereby to nullify the reverter clause contained in the dedication. The file in that suit is not before us, so we do not know the issues there made. But it is not reasonable to assume that the Chancellor intended to impose upon the purchasers the burdens but deprive them of the benefits contained in the dedicatory instrument. The contention of the appellees Feidelson in this respect can not, therefore, be in the opinion of the writer sustained.
So the question then becomes: Is the reverter clause in the dedication sufficient to rebut the presumption that the conveyance of a lot abutting a street carries with it the fee simple title to the center of the streets? In the opinion of the writer, the only reasonable interpretation of this clause is that the Coral Gables Corporation intended to reserve for itself, or for any person to whom it might convey the fee simple title to the property underneath the streets, the right to the entire beneficial interest in such property upon the discontinuance of the public use to which it was dedicated; and that such clause negatives a "supposed intention" that a conveyance of a lot abutting upon a street would carry with it the title to the center of the street. This interpretation comports with the remainder of the dedicatory instrument, by which the dedicator provided that all alleys and parks shown on the plat should remain the property of the dedicator, its successors and assigns, "for private use and disposition." The record *296 also shows that the Wheelers (or Mrs. Wheeler) have so construed the reverter clause over the years, by making conveyances of portion of streets and alleys, one of which was assigned by the Wheeler's grantee to the plaintiffs Meyer.
The cases cited by counsel for plaintiffs are not decisive here, since in none of them does it appear that there was appended to the dedication a reverter clause such as that with which we are here concerned. Counsel for the defendant Servando has cited the case of State by Burnquist v. Marcks, 1949, 228 Minn. 129, 36 N.W.2d 594, 596, in which the dedicatory plat contained a clause declaring that the "reversionary title" of any vacated street was expressly reserved to the "`original platting company'" and providing that "`the fee and any part of any street is declared not to be included in or as any part of any lot therein.'" It will be seen that this reverter clause is couched in somewhat stronger language than that involved in the instant case, and it was apparently undisputed that the assignee of the original platting company took title to a street, upon its abandonment by the city, rather than an abutting lot owner.
In Plumer v. Johnston, 1886, 63 Mich. 165, 29 N.W. 687, 689, the exact question with which we are here concerned was presented, under a reservation contained in the instrument dedicating the plat, as follows: "`Reserving to ourselves, however, said street and alleys, whenever the same may be discontinued by law.'" In upholding the title of the original owner to a vacated street as against the claim of the owner of abutting lots, the court said:
"Whether this reservation amounts to a condition upon which the dedication was made, need not now be determined. The intent is plainly manifest that conveyances of lots upon the plat should not carry the title to the middle of the streets and alleys thereon, and that if the dedication was not accepted, or, if accepted, the street should be vacated, the title, use, and possession should become absolute in the plaintiff * * *."
And in Helm v. Webster, 1877, 85 Ill. 116, one Holmes and others conveyed property to the city for use as a street and provided in the deed that the property should "revert to the present owners thereof, their heirs or assigns," upon the vacation or abandonment of the street by the city. Holmes sold property abutting on the street, together with his reversionary interest in the street, to Webster; and Webster thereafter subdivided the premises. Mrs. Helm purchased from Webster lots abutting on the street, and the controversy was between Webster and Helm as to the ownership of the street after it was vacated by the city. While the case turned on another point, the court said:
"It cannot be denied that, by virtue of Holmes' deed to [Webster], * * * [Webster] became vested with all the rights reserved by Holmes in his deed of August 24, 1855; but without that reservation in this deed, Holmes, on general principles, would have been remitted to his title, on the abandonment of the street by the city."
As previously noted, counsel for the plaintiffs have cited no case holding to the contrary, and an independent research has revealed none. It is the opinion of the writer, then, by reason and by authority, that a provision in a dedication that the streets shall revert to the dedicator, its successors or assigns, upon their vacation or abandonment by the city, plainly manifests an intention that conveyances of lots abutting upon such streets shall not carry the title to the middle of the streets. This being so, the plaintiffs in the instant case have no title to the property underneath the streets upon which their lots abut, so it was error to quiet their title therein as against the deed from Mrs. Wheeler to Servando.
Accordingly, I would reverse the decree appealed from.