Blair **WOLFSON**, Trustee for the Wilfred Wolfson Marital Trust, et al.,
Respondents,

v.

**CITY OF ST. PAUL, Appellant.**

Nos. C1–95–206, CX–95–446.

Court of Appeals of Minnesota.

Aug. 1, 1995.

Review Denied Sept. 28, 1995.

Joseph M. Finley, Bradley J. Gunn, Leonard, Street and Deinard, Minneapolis, for respondents.

Timothy E. Marx, City Atty., Edward P. Starr, Asst. City Atty., Carla J. Heyl, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by PARKER, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

After losing this inverse condemnation action at trial, appellant City of St. Paul filed a posttrial motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. Respondents sought statutory costs and fees. The trial court denied the

city's motion and awarded respondents costs and fees. The city challenges these rulings on appeal.

## FACTS

Respondents own a retail center on the corner of Lexington Parkway and University Avenue. In 1886 the city condemned an 80–foot strip for Lexington Avenue. Forty feet was taken from lots on each side of the street. In 1902, additional strips of 40 feet were condemned on each side of the street for a grassy boulevard; the street became Lexington Parkway. In 1956 respondents sought a parking lot for customers of the retail center to replace the 40–foot grass parkway. The city agreed to construct the parking lot and assess respondents for the costs.

The lot as constructed was set off from the street. It was utilized by customers of respondents' tenants. The city neither maintained the lot nor regulated parking in the lot. In 1993 the city replaced the parking lot with a right-turn lane and respondents instituted an inverse condemnation action.

At trial, the jury found in favor of respondents on the theories of reverter, abandonment and estoppel, and also determined that respondents suffered special damage. The trial court found that there had been a taking and issued a writ of mandamus. The trial court subsequently denied appellant's motion for JNOV or a new trial and pursuant to Minn.Stat. § 117.045, awarded costs and fees to respondents, including $82,222.50 in attorney fees.

## ISSUES

1. Did the trial court err in denying appellant's motion for JNOV or new trial on the issue of: (1) whether respondents had an interest in Lexington Parkway; (2) whether respondents proved affirmative, unequivocal acts by appellant; and (3) whether there was a taking of respondents' property?

2. Did the trial court abuse its discretion in awarding respondents $82,222.50 in attorney fees?

## ANALYSIS

### I.

■ Ordinarily the decision to grant a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Halla Nursery v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990).

A motion for judgment notwithstanding the verdict admits every inference reasonably tending to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Unless we are able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand.

*Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

#### 1. Reversionary Interest

The city argues first that the trial court erred in denying JNOV or a new trial because, as a matter of law, respondents did not have a reversionary interest in the land condemned for Lexington Parkway. The city contends that because having such an interest is required for the claims of reverter and abandonment, they are entitled to JNOV or a new trial. We disagree.

■ Where the intention of the parties can be determined wholly from the writing, the construction of the instrument is a question of law for the court to resolve. *Empire State Bank v. Devereaux*, 402 N.W.2d 584, 587 (Minn.App.1987) (citing *Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966)). This court is not required to defer to the trial court's findings. *Id.*

■ The city did not acquire a full fee interest in the land it condemned. *See Buck v. City of Winona*, 271 Minn. 145, 150–51, 135 N.W.2d 190, 193–94 (1965) (a municipality takes only an easement when condemning land for public park and parkway purposes, and the land reverts back to the fee owners when no longer used for those purposes). The language of respondents' deed unambig-

uously conveys to them the grantor's reversionary interest in the condemned land. The deed conveys the

> north one-half (N ½) of lot numbered fifteen (15), Hyde Park, St. Paul, Minnesota, *except that part taken by the city of St. Paul for Lexington Avenue* and Aurora Avenue.

(Emphasis added.) The deed for respondents' property excepts the land taken by the city in the 1886 condemnation for Lexington Avenue but does not except the portion of the land taken for the parkway in 1902. Even if the deed included an exception relating to the land condemned in 1902 for Lexington Parkway, the reversionary interest of the condemned land would have been conveyed to respondents by the deed. *See Lacy v. Montgomery,* 181 Pa.Super. 640, 124 A.2d 492, 496 (1956) (under a similar exception in a deed, the grantor conveyed the reversionary rights to land taken for a public right-of-way to the grantee). We conclude the trial court did not err by refusing to grant JNOV or a new trial on this basis.

▮ The fact that the city gave permission to respondents to use the parkway for a parking lot is not determinative under eminent domain principles. When a governmental unit condemns land for a limited public purpose, the land reverts back to the fee owner if the property is no longer used for the public purpose. *Buck,* 271 Minn. at 151, 135 N.W.2d at 194. The jury here found that the city's interest in the parkway property reverted to respondents. Since that verdict is supported by evidence that the land in question was not being used for the limited parkway purposes, we must affirm.

### 2. Affirmative or Unequivocal Acts

▮ The city also contends that the trial court should have granted JNOV or a new trial on the theories of abandonment and estoppel because respondents did not prove: (1) unequivocal, affirmative acts of the city showing an intent to abandon the parkway; or (2) the parking lot was a use inconsistent with the city's interest in the parkway. We disagree.

> Long-continued nonuser, in order to constitute abandonment of a public street dedicated to public use pursuant to statute, must originate in or be accompanied by some affirmative or unequivocal acts of the municipality indicative of an intent to abandon, and inconsistent with the continued existence of, the easement.

*Village of Newport v. Taylor,* 225 Minn. 299, 305, 30 N.W.2d 588, 592 (1948). The test for estoppel has similar requirements to those necessary to establish abandonment in that it also requires long-continued nonuser:

> [A]n estoppel arises where there is long-continued nonuser by the municipality, together with the possession by private parties in good faith and in the belief that its use as a street has been abandoned, and the erection of valuable improvements thereon without objection from the municipality, which has knowledge thereof, so that to reclaim the land would result in great damage to those in possession.

*City of Rochester v. North Side Corp.,* 211 Minn. 276, 279, 1 N.W.2d 361, 363 (1941), *quoted in Halverson v. Village of Deerwood,* 322 N.W.2d 761, 767 (Minn.1982). Affirmative action by the municipality is required both for a claim of abandonment and estoppel. *Newport,* 225 Minn. at 305–06, 30 N.W.2d at 592–93. Mere nonuser is insufficient. *Id.* at 306, 30 N.W.2d at 593.

▮ The city argues that this case can be distinguished from holdings of abandonment in *Rochester, Halverson* and *State, by Burnquist v. Marcks,* 228 Minn. 129, 36 N.W.2d 594 (1949) because: (1) respondents did not construct a building on the land or make valuable improvements to their detriment in reliance on the city's actions; and (2) the evidence is insufficient to show the city took affirmative, unequivocal acts to abandon the parkway. We disagree.

First, there is no requirement that the improvement on the abandoned property be a building. In *Rochester* the "structures" impairing the government's easement included gas tanks and underground tanks, 211 Minn. at 277, 1 N.W.2d at 362, and in *Newport* the structures included sheds, chicken coops, fences, gardens, pumps, water systems and cesspools, 225 Minn. at 301, 30 N.W.2d at 590. Here, respondents paid for

the parking lot, as well as its maintenance and improvement for over 35 years. Evidence was presented concerning the value of the parking lot to respondents' tenants. A jury could infer from these facts that respondents asked and paid for the parking lot in good faith reliance on the belief that appellant was abandoning its right to the property.

Appellant and amicus curiae argue that the evidence was insufficient to prove affirmative, unequivocal acts showing an intent to abandon. The *Newport* court pointed out three affirmative acts establishing estoppel in the *Rochester* case: (1) physically relocating a street and improving and maintaining it for years in the new location; (2) laying sewers and water mains in the new location; and (3) authorizing defendants to build on the original street by issuance of city building permits. 225 Minn. at 308, 30 N.W.2d at 594. As required by *Newport,* the long-continued nonuser here came about as a result of actions taken by the city. The city caused the elimination of the grassy parkway by constructing the parking lot and through a formal city council resolution, allowed the parking lot to be paid for, used and maintained by respondents.

We conclude that the affirmative acts of appellant, in addition to appellant's failure to maintain the lot or in any way exercise control over the property for more than 35 years, are sufficient to support the jury's verdicts of abandonment and estoppel. Since the verdicts are not manifestly and palpably contrary to the evidence, and the evidence is not conclusive against the verdict, the trial court did not err by refusing to grant JNOV or a new trial.

Appellant and amicus curiae make a separate argument relating solely to the theory of abandonment: that because parking is a compatible use of a street, respondents did not prove that the affirmative acts of the city were inconsistent with the continued existence of the public right-of-way. We disagree.

First, the easement at issue is the 40 feet taken in 1902 for the parkway and not the easement for the traffic right-of-way. The record contains evidence that the city's acts were inconsistent with the continued exis-

tence of the parkway. Second, the city did not eliminate the parkway to create street parking at its own expense and with responsibility for future maintenance. Rather, the city agreed to construct a parking lot set off from the street, to be paid for, maintained and controlled by private parties. This evidence supports the jury finding that the parking lot was inconsistent with use of the property as a parkway. Viewed in the light most favorable to the verdict, we cannot say the verdict of abandonment is manifestly and palpably contrary to the evidence or that reasonable minds could reach only one conclusion against the verdict.

### 3. Constitutional Taking

■ The city argues that the trial court erred in denying JNOV or a new trial because there was no constitutional taking of respondents' property. The city contends the construction of the right-turn lane was a valid use of the public right-of-way for the parkway. We disagree. The city's argument assumes that it had the right to exercise control over the parking lot where the parkway used to be. Because we concluded above that the evidence supported the jury's verdicts of reverter, abandonment and estoppel, however, respondents owned the property and the city's destruction of the parking lot was correctly found to be a taking.

### II.

■ In reviewing an award of attorney fees, we are limited to deciding whether the trial court abused its discretion. *Radloff v. First Am. Nat'l Bank,* 470 N.W.2d 154, 156 (Minn.App.1991), *pet. for rev. denied* (Minn. July 24, 1991). The trial court is in the best position to determine the extent to which attorney fees were necessary to the prosecution of the inverse condemnation action. *Spaeth v. City of Plymouth,* 344 N.W.2d 815, 824 (Minn.1984).

Appellant contends the trial court order granting attorney fees of $82,222.50 should be reduced by $20,000. Appellant argues that the hourly rate requested by respondents' attorneys was unreasonable and that the hours charged were excessive, redun-

dant, or unnecessary. We disagree because we cannot say the trial court abused its discretion by awarding attorney fees to respondents based on the work of two attorneys and computed at the attorneys' minimum hourly rates.

## DECISION

The trial court did not err in denying appellant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial when it ruled that respondents owned the reversionary interest in the property condemned for Lexington Parkway in 1902. The trial court also did not err in denying the posttrial motion because a jury reasonably could find that: (1) appellant acted affirmatively and unequivocally in showing its intent to abandon the parkway; and (2) the parking lot was inconsistent with use as a parkway. The trial court did not err in concluding there was a constitutional taking when appellant replaced the parking lot with a right-turn lane. Finally, the trial court did not abuse its discretion in awarding attorney fees to respondents.

**Affirmed.**