# Third District Court of Appeal

## State of Florida

Opinion filed August 6, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-3058
Lower Tribunal No. 10-334-P
_____

**James Bellizzi,**
Appellant,

vs.

**Islamorada, Village of Islands, Florida, et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Luis M. Garcia, Judge.

Franklin D. Greenman (Marathon), for appellant.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman and Chris Ambrosio; Vernis & Bowling and Dirk Smits (Islamorada) and Jeffrey L. Hochman (Fort Lauderdale), for appellees.

Before LAGOA, SALTER and EMAS, JJ.

SALTER, J.

A residential lot owner, Mr. Bellizzi, appeals a final judgment and summary judgment order in favor of the Village of Islamorada (Islamorada) and Venetian Shores Homeowners Association, Inc. (Association). The parties to this appeal sought to determine their respective property rights in three roadways (Severino Drive, Venetian Way, and Venetian Boulevard) in a platted subdivision in Islamorada known as "Venetian Shores." We affirm the trial court's well-reasoned judgment and order, and we dismiss the untimely attempts to appeal the final judgment and summary judgment order by two of the plaintiffs below, Mrs. Bellizzi and Monroe County Land Trust, Inc. (MCLT), for lack of jurisdiction.

I.    Facts and Claims

Venetian Shores was platted in 1956. Five additional plats were recorded through 1982, but the determination of this appeal turns on the first three plats. "Plat No. 1" laid out 130 residential lots and four roads. Pertinent here, Venetian Boulevard was divided into two segments; that portion of the road joining the Overseas Highway was depicted as a "Dedicated Road," and the second (interior) part of Venetian Boulevard was depicted as a "Private Road." The granting clauses of the first plat stated that the dedicated portion of Venetian Boulevard was "dedicated to the perpetual use of the public for proper purposes," with a reversion to the developer "whenever discontinued by law." The portion depicted as a

2

"Private Road" was "reserved for the exclusive use of owners of property in this subdivision," with no express term for reversion. (Emphasis added).

"Plat No. 2" (1957) expanded Venetian Shores, adding more roads, canals, and residential lots. One road, Porto Salvo Drive, was dedicated to public use with a reversion to the developer "whenever discontinued by law," and "[a]ll other drives and [Venetian Boulevard] are not dedicated but are for the exclusive use of owners of property in the subdivision." (Emphasis added). Finally, "Plat No. 3" (1961) further expanded the Venetian Shores subdivision. The granting clause included a provision that "The Boulevard [Venetian Boulevard], Drives, and Canals as shown hereon are not dedicated to the public, but are reserved for the exclusive use of owners of property in this subdivision." (Emphasis added).

In 1961, the developer assigned its rights to operate and manage the subdivision to the Association. In 1966, City National Bank (as trustee for the successor developer) conveyed the roads depicted in Venetian Shores Plat No. 3 to Monroe County. In 1969, Monroe County deeded the roads in the subdivision to the Florida Department of Transportation (FDOT). FDOT then filed an official map of location and survey for Severino Drive, Venetian Way, and Venetian Boulevard and paved the roads. In 1984, the roads were quitclaimed by the State back to Monroe County. Litigation between the Association and the County, regarding the County's alleged duty to maintain the roads in the subdivision, was

3

settled in 1986. In 1997, Islamorada was incorporated as a municipality; the following year, Monroe County transferred title to the roads in Venetian Shores to Islamorada, which assumed responsibility for them.

Meanwhile, Mr. and Mrs. Bellizzi acquired a fee simple interest in Lot 15, Block 30, Venetian Shores Plat No. 3, in November, 1998, and MCLT acquired a fee simple interest in 21 lots in various blocks in Plat No. 2, in 2010.[1] In the second amended complaint, the Bellizzis and MCLT asserted causes of action: for a declaratory judgment that they own the fee simple interest in Severino Drive, Venetian Way, and Venetian Boulevard "to their midpoints, directly adjacent and abutting Plaintiffs' respective properties" (Count I); to quiet title to those areas within the roadways and canals[2] (Count II); for statutory and common law inverse condemnation compensation for those areas within the roadways, should the court determine that Islamorada is the legal owner of the roads (Counts III and IV); and for a declaratory judgment that the Bellizzis and MCLT own the canals shown on the plats "to their midpoints, directly adjacent and abutting Plaintiffs' respective properties."

---

[1] MCLT was allowed to intervene as a plaintiff for purposes of the claims in the second amended complaint. Mr. Bellizzi is identified as a vice president of MCLT, and the Bellizzis and MCLT have been represented by the same counsel.

[2] In this appeal, the Bellizzis and MCLT have not attempted to pursue their claims with respect to the canals. In the final judgment, the trial court also noted that "[Islamorada] has not claimed any interest in the canals," and thus the court declined to determine the current owner of the canals.

Islamorada and the Association moved for and obtained a summary judgment regarding Islamorada's ownership of the roads. The trial court found, among other things, that:

> [T]he grantor-developer intended to retain ownership of the entire road until it could convey it to the [Association]. By retaining the fee to the disputed land, the developer would provide the Association, and the individual owners of the development, with a uniform system of roads accessing all parts of the development, and the world beyond.

A final judgment in favor of Islamorada and the Association was issued, and this appeal followed.[3]

II.    Jurisdiction

As a threshold matter, we must decide whether Mrs. Bellizzi and MCLT timely invoked this Court's jurisdiction. We conclude that they did not, and we therefore dismiss the appeal as it pertains to each of them.

The order granting summary judgment identified all three plaintiffs (the Bellizzis and MCLT) in the caption, referred repeatedly to the "Plaintiffs," and identified each of the three plaintiffs by name at page four of the order. The original final judgment (November 7, 2013) only identified Mr. Bellizzi as the plaintiff in the caption, but the decretal paragraph entered final judgment on "all claims" in favor of Islamorada and the Association "and against the Plaintiffs in accordance with the [order granting summary judgment]".

---

[3] The Bellizzis and MCLT also moved for summary judgment, and that motion was denied.

5

The original notice of appeal (December 2, 2013) named Mr. Bellizzi as the lone appellant, as did a motion for an extension of time to file the initial brief, eight weeks later. The original notice of appeal also acknowledged that the final judgment in favor of Islamorada and the Association incorporated the order granting them summary judgment. After the Bellizzis and MCLT identified all three of them as appellants in the initial brief, however, Islamorada and the Association moved to dismiss the appeal as to MCLT.[4] In response to the motion to dismiss (in March 2014), and without obtaining a relinquishment of jurisdiction under Florida Rule of Appellate Procedure 9.600(b), the Bellizzis and MCLT moved the trial court to amend the final judgment to indicate that all three of them were plaintiffs. The trial court obligingly granted the motion, and an amended final judgment was entered against the Bellizzis and MCLT on June 9, 2014. Importantly, the record on appeal had been docketed in this Court on March 5, 2014.

On June 12, 2014, the Bellizzis and MCLT filed an "amended notice of appeal" in this Court, this time designating all three of them as appellants. Islamorada and the Association again moved to dismiss the appeal as to MCLT.

---

[4] Dismissal of the appeal as to Mrs. Bellizzi is essentially ineffectual, as the Bellizzis hold title to their lot as spouses. An adjudication or decision on appeal in favor of Mr. Bellizzi's alleged rights in the roadway would extend, as a practical matter, the same relief to Mrs. Bellizzi.

Florida Rule of Civil Procedure 1.540 (a) allows the trial court to correct a clerical mistake or an error "arising from oversight or omission" on a limited basis once an appeal is underway. "During the pendency of an appeal such mistakes may be so corrected before the record on appeal is docketed in the appellate court, and thereafter while the appeal is pending may be corrected with leave of the appellate court." Id. In the present case, the attempted correction of the final judgment was undertaken after the record on appeal had been docketed and without leave of this Court. The amendment of the final judgment was a nullity.

Additionally, the purported amendment would not have affected the finality of the original final judgment and its incorporation of the order granting summary judgment. See Borja v. NationsBank of Fla., N.A., 698 So. 2d 280 (Fla. 3d DCA 1997) (trial court's amendment of a final judgment to correct a clerical error does not affect the judgment's finality for purposes of appeal).

We conclude that we lack jurisdiction to consider this appeal as to Mrs. Bellizzi and MCLT, and we thus dismiss the appeal as to each of them.

III.    Analysis: Mr. Bellizzi's Claims to Part of the Roadways

At the outset, it should be observed that Mr. Bellizzi's theory of ownership of a fee interest in the platted road, Severino Drive, would wreak havoc in Venetian Shores if validated. If each lot owner owned a fee interest in the property below the pavement and to the midpoint of any roadway abutting the lot, subject to

7

the exclusive use of all 531 subdivision lot owners, communal maintenance and repair of the street would be complex, at best. The trial court considered the plats and the 1957 Venetian Shores "Declaration Concerning Restrictions and Improvements" as uncontroverted evidence of the developer's intention to create "a uniform system of roads accessing all parts of the development," and a "blueprint for the governance of the development as it went forward." Left to their own individual calculus of costs and benefits regarding the roads, some lot owners might prefer (and be willing to contribute their pro rata portion of the cost of) a uniformly paved and striped roadway, while others might be unwilling to make such contributions and might prefer to let the roadway revert to spalled asphalt and crushed coral fill.

It should also be mentioned that the record reflects no effort by the Bellizzis, MCLT, or other lot owners to (a) pay any part of the costs associated with paving or maintaining the roadways, or (b) obtain a property tax folio number for the applicable portion of the roadway purportedly owned by each lot owner, much less to pay property taxes on that small parcel.

But the test of common sense does not always carry the day in real estate disputes. We thus evaluate the legal arguments and authorities relied upon by Mr. Bellizzi. Foremost among these is the "common law rule" described in <u>Smith v.</u>

Horn, 70 So. 436 (Fla. 1915) and Servando Bldg. Co. v. Zimmerman, 91 So. 2d 289 (Fla. 1956).  In Smith, that rule is summarized:

> Where the owner of land has it surveyed, mapped, and platted showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, the title to the land under the street remaining in the owner or his grantees; and where such conveyances are made with reference to the map or plat, the dedication of the easement for street purposes cannot be subsequently revoked as against the grantees, and the title of the grantees of subdivisions abutting on such streets, in the absence of a contrary showing, extends to the center of such highway subject to the public easement. And, where the highway is lawfully surrendered, the then holder of the title to abutting property and to the center of the street has the property relieved of the public easement.

Smith, 70 So. at 436 (citations omitted).

Roadways, paving, and automobiles have changed over the intervening century, but the case is also distinguishable on its facts.  In the present case, the developer never "surrendered" the fee interest in the roadway; rather, the developer assigned that interest to a successor, which in turn conveyed it to Monroe County, with conveyances continuing successively to FDOT, back to Monroe County, and thence to Islamorada.  The limited piece of the bundle of rights granted by the plats to residential lot owners was an easement of use of the roadway by all such owners, not fee title to a portion of the roadway out to the middle of the street and abutting the lot.

9

Similarly, in <u>Servando Bldg. Co.</u>, a mortgagee foreclosed upon a developer's reversionary interest in certain streets and alleys shown on a plat and dedicated to the public. A successor in title to the successful purchaser at the foreclosure sale claimed fee simple ownership of a portion of two streets shown on the plat, but later "vacated and discontinued" by the municipality. The trial court concluded that the developer's intention was to grant the lot owners title to the center of those streets subject to the easement granted (and marketed) to the public. The Supreme Court of Florida affirmed, based on the impracticality of allowing the claimed owner of the vacated street to deprive lot owners of access, and based as well on the developer's obvious intention to make the streets "a factor indispensable to successful marketing." <u>Servando Bldg. Co.</u>, 91 So. 2d at 293.

In the present case, the parties that ultimately acquired the developer's reversionary interests were public entities, not a private party, carrying out the developer's intention to allow lot owners access to their property. Originally, it is true, the developer's express intention was that a guard house would be constructed at the entrance to Venetian Shores, and that the roads would be private, for the exclusive use of the lot owners. But, as the trial court concluded, it is equally clear that "the grantor-developer intended to retain ownership of the entire road until it could convey it to the [Association]." The developer, its successors, and the Association ultimately concluded that the transfer of the roads to public

10

entities was in the best interest of the lot owners. And those decisions were made and given effect in the public records many years before the Bellizzis or MCLT acquired any interest in the lots depicted on the plats.

The present case is also distinguishable from another case relied upon by Mr. Bellizzi, Langston v. City of Miami Beach, 242 So. 2d 481 (Fla. 3d DCA 1971). In that case, the developer created a road for the private use of the lot owners, but also granted the abutting lot owners a right to close and vacate the private road, or part of it. In the present case, the developer retained, and did not convey to the lot owners, any rights to close or vacate the roadways.

Finally, we reject Mr. Bellizzi's contention that there are "three documents in the Record that corroborate the finding that the roads in Venetian Shores are private, and not dedicated to the public." A March 1983 letter from the Director of the Monroe County Public Works Department to the then-President of the Association expressed a belief that some of the roads were private roads (despite the fact that FDOT had paved them) and proposed a series of steps to bring those roads under County maintenance jurisdiction. These issues were resolved in the 1986 settlement of a lawsuit between the Association and County. A May 1986 letter from the County's outside engineering consultant (several months before the 1986 settlement was approved) was apparently written by a non-lawyer recommending what should be done regarding the roadways and the wetlands

11

portions of Venetian Shores. The November 2009 letter from an attorney employed by a title insurer provided a title report to a law firm then representing Islamorada. The report concludes that the County-Association settlement in 1986 "could clearly be construed to be an offer to dedicate" Venetian Boulevard and the feeder streets to the west of it, but concludes that without additional documents the insurer could not insure title. The report does not conclude or concede that Mr. Bellizzi acquired title to any part of the roadways.

IV. <u>Conclusion</u>

The trial court carefully and correctly reviewed the plats, deeds, declaration of restrictions, and other record evidence regarding the lots and roadways. No error having been demonstrated, the final judgment and order granting summary judgment below are affirmed in all respects. We strike the amended notice of appeal filed here, and we dismiss the appeal as to Mrs. Bellizzi and MCLT for lack of jurisdiction.